In the Matter of Rick Lewis BERRY and Tamara Lynn Berry, Debtors.

Bankruptcy No. 3-80-00027.

United States Bankruptcy Court, S. D. Ohio, W. D.

March 18, 1980.

John W. Rudduck, Wilmington, Ohio, for debtors.

O. J. Gerhardstein, Trustee, Dayton, Ohio, George Ledford, Trustee, Englewood, Ohio.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

Rick Lewis Berry and Tamara Lynn Berry, husband and wife, filed a joint petition under Chapter 13 of Title 11, United States Code on 4 January 1980. Rick is employed by Delco Products Division of General Motors Corporation and earned a gross income of $17,653.47 during the past calendar year and reports current gross earnings of $370.00 per week, and take home earnings of $945.00 per month. Tamara has no income. They list two infant children, ages 1 and 3 years.

He has payroll deductions totalling $218.00 per week, including $71.00 for Delco

Triangle Credit Union. The estimated monthly family expenses total $895.00, including $294.00 for home mortgage payments. Assets scheduled are household goods used as collateral on a loan from Household Finance Corporation; a 1979 Dodge used as collateral on a loan from Delco Triangle Credit Union; the residence property encumbered by a mortgage to North Central Mortgage Corporation; an account with the Credit Union with a balance of $345.00, also pledged as collateral; an anticipated federal income tax refund of $1,200.00, and, a 1976 Ford Pinto used as collateral on a loan from First National Bank of Blanchester.

The valuation estimated by Debtors for the 1979 Dodge is $6,500.00; for the 1976 Ford, $750.00; for the household goods, $3,360.00; and for the real estate, $35,000.00. Miscellaneous personal goods are also listed at a valuation of $500.00.

The secured debt to Household Finance is scheduled at $2,980.00, repayable $90.00 per month, and 6 months in arrears; the secured debt to Delco Triangle Credit Union is scheduled at $8,185.00 repayable at $245.60 per month, and current; the secured debt to North Central Mortgage Corporation is $31,000.00 repayable at $294.00 per month, and 6 months in arrears. One Elmer Berry has assumed the liability for payment of the debt to The First National Bank and, for an unknown reason, this claim is scheduled as unsecured. Elmer Berry is also scheduled as an unsecured creditor for $1,900.00.

There are scheduled 16 additional unsecured creditors, with debts totalling in excess of $6,500.00.

Debtors have filed a Plan proposing to pay to the Trustee the sum of only $50.00 weekly for the payment of a dividend of $30.00 per month to Household Finance for 36 months, and $1,200.00 to the same secured creditor upon receipt of a federal income tax refund. The Plan further proposes that the wage withdrawal is to be continued for Delco Triangle Credit Union until this debt is paid in full or 36 months have elapsed. Debtors' attorney is to be paid $11.50 per month for 36 months and "priority payments to be $8.50 monthly."

The Plan further provides that "No other repayment provisions are made. Debtors are seeking a discharge from all debts disclosed in this Petition not otherwise provided for and not fully satisfied after 36 months."

All property is claimed as exempt. The exemptions claimed are not available, however, as the federal exemptions under 11 U.S.C. § 522(d) are asserted, and these exemptions have been preempted and superseded by the Ohio Statutes pursuant to 11 U.S.C. § 522(b).

Household Finance Corporation filed a secured claim in the amount of $3,022.22, plus interest; The First National Bank filed an unsecured claim in the amount of $238.52; P. F. Collier, Inc., filed an unsecured claim in the amount of $241.55; and Delco Triangle Credit Union, Inc., filed a secured claim in the amount of $8,040.31.

## DECISION

The facts *instanter* raise several questions vis-à-vis the purpose and effect of the Chapter 13 statutes, and the intent of the Congress in fostering such "voluntary repayment plans."

In this court and apparently throughout the country, Chapter 13 plans are being filed with scant regard to the debts of unsecured creditors, despite the potential of payments from the prospective earnings of the debtor. Increasingly, such Plans are paying certain select secured creditors "outside the plan", that is, by payroll deduction or direct payments.

Debtors here not only are proposing to pay a special creditor (credit union) outside the Plan, and only one creditor (at least partially secured) through the court's trustee; but also, they are proposing to pay unsecured creditors nothing from substantial future earnings.

Such blatant exploitation of the statutory scheme has aroused the righteous indignation of conscientious judges, witnessed by numerous well-reasoned interpretations of

the statutes. An amendment to 11 U.S.C. § 1325(a)(3) has been proposed, to insert the words "is the debtor's best effort and" after the word "plan". In the case of *In re Burrell* (Bkrtcy. N.D. Cal.) 2 B.R. 650, 5 B.C.D. 1321 the court before such statutory amendment decided, "In order to help achieve, rather than frustrate, Congressional policy and in order to avoid a construction of Chapter 13 that leads to absurd results, I hold that substantial payment and best effort requirements must be read into Section 1325(a). I further hold that Congress has defined substantial as 70% or more of allowed unsecured claims." [referring to 11 U.S.C. 727(a)(9)].

Other well reasoned decisions have concluded that such plans should not be confirmed because of "disparate and discriminatory treatment without rational basis," see *In re Fizer* (Bkrtcy. S.D. Ohio) 1 B. R. 400, 5 B.C.D. 1052; or because "a plan that classifies claims must provide equal treatment of each claim in a particular class and paying some creditors outside the plan" is such a classification, see *In re Blevins* (Bkrtcy. S.D. Ohio) 1 B.R. 442, 5 B.C.D. 1054; or "that the disparate treatment resulting to unsecured claims is subject to scrutiny and in the absence of a rational justification is not permitted under the Code." See *In re Tatum* (Bkrtcy. S.D. Ohio) 1 B.R. 445, 5 B.C.D. 1069. Other courts have discussed "bad faith" in terms of "meaningful payments" to unsecured creditors. See *In re Iacovoni* (Bkrtcy. D. Utah) 2 B.R. 256, 5 B.C.D. 1270; *In re Beaver*, 5 B.C.D. 1285; and *In re Fonnest, et al.*, 5 B.C.D. 1236.

The brief filed in behalf of debtor herein cites no case precedents reaching any different conclusions. Even more significantly, there also is no reference to or attempts at distinguishing this obvious line of judicial precedents, which are completely ignored.

Perhaps reaching beyond the terms of the statutes for higher principles is unwarranted. It is very questionable whether any payments "outside the plan" constitute a designation "of a class of unsecured claims, as provided in Section 1122 . . . ." Since debts not paid in the Plan are not subject to the Plan and discharged, it is difficult to rationalize such claims as being a class, if the "best interest" test of 1325(a)(4) has been met as to the unsecured claims inside the ambit of the plan.

■ Despite the sense of injustice perceived by so many courts, whether or not a Plan should be confirmed is controlled by 11 U.S.C. § 1325. Such a plan must (1) be proposed "in good faith and not by any means forbidden by law;" (2) the value of property to be distributed *under the plan* to unsecured creditors *is not less than* the amount that would be paid in liquidation under Chapter 7; and (3) the plan is feasible in the sense that debtor will be able to make all payments under the plan.

■ A finding of "good faith" of debtor should not be based exclusively on the court's gastronomic reaction to the quantum received by creditors, if the "best interest" test has been met, because debtors have been afforded an unqualified right to conversion to a case under Chapter 7 at any time, see *11 U.S.C. § 1307*. Furthermore, the Congress has emphasized the point on numerous occasions that involuntary Chapter 13 is not acceptable. See *11 U.S.C. § 706(c) and House Report No. 95–595, U.S. Code Cong. & Admin. News, 1978, p. 5787 under 11 U.S.C. § 707*. The term "good faith" (if it has any real significance) must be evidence *aliunde*.

■ Since the facts before us leave very serious doubt as to whether the "best interests" of the unsecured creditors has been achieved, the one secured creditor affected by the plan is being paid $1,200.00 from funds not properly claimed as exempt, and the value of the collateral being uncontested, the court must exercise due caution.

Even more critical, in any case that diverts debtor's property, including future earnings, to a creditor not affected by the plan, a serious problem as to "feasability" is inherent. If the court exercises jurisdiction to enforce compliance with a plan, there should be no latent possibility that any

creditor outside the confirmed plan would be paid to the jeopardy of the funds handled by the court's trustee.

Because of these very crucial problems, the court must exercise statutory jurisdiction to superintend the debtor's estate. The court is constrained to confirm the plan, subject to continuing jurisdiction to make further findings as to "good faith" and "the best interests of unsecured creditors."

In all such cases filed in this court wherein property or funds are being diverted to special creditors outside the plan it will be the policy of the court to retain complete jurisdiction over the estate, including future earnings, conformably to 11 U.S.C. § 1327. It will further be the policy of the court to retain exclusive control over all earnings and other anticipated income to be paid to the Chapter 13 Trustee because the primary thrust and responsibility in exercising jurisdiction will be to protect creditors under the plan as confirmed. In no other fashion can the court equitably administer the proverbial "cram down" provisions contained in the Code.

To this purpose, all of the income payable to debtor from his employer should be paid directly to the trustee, who will first pay obligations under the confirmed plan and then forthwith return the uncommitted portion to the debtor for payments to creditors not affected by the plan.

Likewise, the unencumbered, non-exempt income tax refund improperly designated for payment to a secured creditor shall be paid to the trustee to be held for a determination of Ohio exemptions, if any, and to be held for the account of the unsecured creditors if later determined to affect their "best interests".

If an appraisal of the collateral encumbered to any of the secured creditors demonstrates that there is, in fact, property which should be applied to the "best interests" of unsecured creditors, the court would convert the case for cause to Chapter 7 or dismiss, whichever is in the best interests of creditors under 11 U.S.C. § 1307(c).

*ORDERED, ADJUDGED AND DECREED*, that the plan should be, and is hereby, confirmed.

*ORDERED*, that Delco Products Division of General Motors pay all of the income of debtor to the Chapter 13 trustee, after the usual statutory payroll deductions, for distribution to creditors and the debtor.

*ORDERED*, that debtor remit to the trustee forthwith upon receipt all property, including income tax refunds, acquired after the commencement of the case.