ST. LUKE PARISH FEDERAL CREDIT UNION, Plaintiff,

v.

Gregory Leo WOURMS, Linda Frances Mondabaugh Wourms, Defendants.

In the Matter of Gregory Leo WOURMS, Linda Frances Mondabaugh Wourms, Debtors.

Adv. No. 3–81–0168.
Bankruptcy No. 3–81–00512.

United States Bankruptcy Court, S. D. Ohio, W. D.

Sept. 21, 1981.

James T. Burroughs, Donald F. Harker, III, Dayton, Ohio, for defendants.

Milton L. Sprowl, Dayton, Ohio, for plaintiff.

George Ledford, Englewood, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter is before the Court for disposition of plaintiff's complaint requesting dismissal of the above-debtors' Chapter 13 proceeding. The Court held a hearing on May 27, 1981, at which time the facts were stipulated for the record. The following decision is based upon the parties' briefs and the record.

### STATEMENT OF FACTS

Plaintiff Credit Union is bringing this adversarial proceeding requesting that debtors' 11 U.S.C. Chapter 13 plan not be approved pursuant to 11 U.S.C. § 1325. Plaintiff argues that the debtors have not made any effort to handle the matter informally, and have instead opted for Chapter 13 when "there is no real need." Plaintiff argues that debtors' Chapter 13 plan is "in abuse at most and a waste of the Court's time and resources at least. . . ." Plaintiff focused its argument on the statutory requirement of good faith in 11 U.S.C. § 1325(a)(3).

Plaintiff's argument is primarily factual. Debtors' only list three thousand seven hundred and nine dollars ($3,709.00) of debt, of which three thousand and two hundred ($3,200.00) is owing to plaintiff. The plan proposes payments to the Trustee of "only" eighty-five dollars ($85.00) per month for a period of sixty (60) months. Plaintiff also emphasizes that debtors made no effort to refinance their only substantial listed debt. The original contract payments are one hundred forty-six and 34/100 dollars ($146.34) per month for forty-eight (48) payments with interest at twelve (12) percent (APR).

Debtors response is basically an elaboration of plaintiff's portrayal of the facts. Debtors' total monthly income is seven hundred twenty and 11/100 dollars ($720.11), and their budgeted monthly expenses are six hundred and thirty four dollars ($634.00). This leaves "disposable income" of eighty-six and 11/100 dollars ($86.11), out of which debtors propose to pay eighty-five dollars ($85.00) per month to the plan. Debtors also emphasize that the plaintiff Credit Union retains its lien under the plan. Further, the creditors will be paid one hundred (100) percent under the Plan, with twelve (12) percent simple interest on the secured amount.

### DECISION AND ORDER

Good faith is an amorphous concept, largely determined by factual inquiry. Case law provides a number of indicia of good faith; there must be a useful purpose for the plan, *In re Associated Gas & Electric Co.*, CCH Dec. ¶ 51,608 (D.N.Y.1939), a complete disclosure regarding all material issues, *In re Payne*, 35 Am.B.R. (N.S.) 402,

CCH Dec. ¶ 409 (D.Colo.1937), and a likelihood of successful completion of the plan (i. e. the plan cannot constitute a "stall tactic"), *Northland Construction Co.*, CCH Dec. ¶ 66,486 (7 Cir. 1977). It is important to note, however, that there are no mathematical formulas to calculate good faith, and the amount of a debtor's contribution to a Chapter 13 plan is merely one factor among the factual considerations to determine good faith. The threshold test to evaluate the amount of 11 U.S.C. Chapter 13 plan contributions is unsecured claims should receive under the Chapter 13 plan an amount not less than that which would have been received had the estate of the debtor been liquidated under 11 U.S.C. Chapter 7. 11 U.S.C. § 1325(a)(4). This Court has previously held that, as long as debtors meet this mandatory requirement of 11 U.S.C. § 1325(a)(4) that the plan be in the "best interests" of the unsecured creditors, good faith is not determined by the size of debtors' Chapter 13 contribution. Instead, there must also be submitted evidence *aliunde* of actual "bad faith." See *In the Matter of Berry*, 5 B.R. 515, 6 B.C.D. 649 (Bkrtcy.S.D. Oh.1980). In other words, "... the concept of good faith should not be linked to the amount of payment, but instead is a standard to be applied by Bankruptcy Courts to thwart misuse of the Bankruptcy Code to further 'sinister and unworthy schemes.'" *In re Erwin*, 10 B.R. 138, 4 C.B.C.2d 174, 177 (Bkrtcy.D.Colo.1981), citing *In re Seely*, 6 B.R. 309 (Bkrtcy.E.D.Va.1980), and *In re Leal*, 7 B.R. 245, 3 C.B.C.2d 299 (Bkrtcy.D. Colo.1980).

This Court finds that, in the instant case, plaintiff has not rebutted defendants' evidence of good faith. Debtors propose contributing approximately twelve percent (12%) of their relatively low income for full payment to the listed creditors, and allege this amount represents their "best possible effort." Plaintiff's case rests primarily on the innuendo of factual inferences, and does not provide the Court with a firm basis for a finding of bad faith. Instead, the Court will confirm the plan, subject to continuing jurisdiction to make further findings as to "good faith" and the "best interests of creditors."

*IT IS HEREBY ORDERED, ADJUDGED AND DECREED* that the record does not support the plaintiff's claim that defendants' Chapter 13 plan was proposed in bad faith in violation of 11 U.S.C. § 1325(a)(3).