**STATE OF OHIO, OHIO STUDENT LOAN COMMISSION, Plaintiff,**

v.

**Anita Gisele WILKINSON, Defendant.**

**In the Matter of Thomas Edward WINSTON, Jr., Anita Gisele Wilkinson, Debtors.**

**Bankruptcy No. 3–81–00898.**
**Adv. No. 3–82–0404.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Nov. 8, 1982.

Edward D. Helvey, Columbus, Ohio, for State of Ohio.

Donald F. Harker, III, Dayton, Ohio, for debtors.

George Ledford, Englewood, Ohio, Trustee.

### DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

#### PRELIMINARY PROCEDURE

This matter is before the Court upon Complaint filed by the Ohio Student Loan Commission of the State of Ohio on 15 June 1982 "to Object to Confirmation of Plan." The Court held a pretrial on 2 August 1982 to consider the matter, at which time the parties submitted a pretrial order the Court subsequently approved. The Court then heard the case on 9 September 1982, and the parties subsequently submitted legal briefs. The following decision is based

upon the parties' briefs, the evidence presented at the hearing, and the record, inclusive of the pretrial order.

## FINDINGS OF FACT

The pertinent facts are not in dispute. Debtors, Thomas Edward Winston, Jr. and Anita Gisele Wilkinson, husband and wife, proposed a Chapter 13 Plan which calls for 5% payment to unsecured creditors upon payments to the Trustee of $75.00 monthly for 36 months. Plaintiff is an unsecured creditor based upon a student loan which Plaintiff argues would not be dischargeable under 11 U.S.C. Chapter 7. Note 11 U.S.C. §§ 523(a) and (a)(8), and 1328(a) and (b). The Court notes that Plaintiff's claim constitutes approximately 20% of the aggregate unsecured debt to be paid through the Plan. Thomas is the only employed Debtor, a waste collector for the City of Dayton, Ohio.

Both Debtors are joint owners of residence real estate, with a scheduled value of $27,000.00, subject to a mortgage to the Dayton Metropolitan Housing Authority for $22,000.00. Arrearages on the mortgage for the months of March, April and May of 1982, totaling $675.00, are to be paid through the Plan, and subsequent payments of $206.00 per month outside the Plan by the Debtors.

The gross wages of Thomas are $294.00 per week, and take-home pay $185.97 per week. The gross income for the last calendar year was in the amount of $12,000.00. The dependents of Debtors are their children, ranging in age from 11 months to 6 years.

The scheduled monthly take-home pay used in the submitted budget is in the amount of only $799.67, with no explanation of the discrepancy from the weekly gross income of $294.00 per week (take-home $185.97 per week). An "income tax refund of $909.00" was scheduled.

The student loan now involved was made to Anita Wilkinson with William L. Wilkinson, co-maker, by Cin Fed Employees Federal Credit Union on 8 October 1981, in the principal amount of $2,500.00. Obviously, her three children were either *in esse* or *in posse* at the time of the loan and do not constitute an unanticipated hardship. Thomas, the chief support of the family, is not liable on this particular debt.

## ISSUES

Plaintiff basically contends that confirmation of the Plan should be denied for a lack of good faith, as required by 11 U.S.C. § 1325(a)(3). Plaintiff argues that the "low percentage of payment" to unsecured creditors, based upon the $75.00 monthly payments argued to be neither substantial nor meaningful, is indication of a bad faith purpose of discharging otherwise nondischargeable debt, especially given the Code's "purpose of encouraging 100% payment whenever possible." In addition, Plaintiff contends that Debtors' payment of $75.00 out of $83.67 "disposable monthly income" only leaves a "cushion" of $8.67, and that the Plan is accordingly not feasible, and also not in the creditors' best interest.

Debtors respond that Debtors have not acted in bad faith. Debtors testified that their primary motive for filing Chapter 13 was to "save the home." Debtors allege that their mortgage payments were in arrears because of a series of garnishments on Debtors' income. Debtors further respond that they anticipate being capable of making prompt monthly Plan payments, as demonstrated by their good payment record to date.

## DECISION AND ORDER

The basic issue in this case is whether the instant request for denial of Plan confirmation should be granted under the guidelines as set forth in this Court's opinion of *State of Ohio Student Loan Commission v. Willis,* 24 B.R. 293 (1982). Based upon an application of the facts *instanter* as to the quantum of payments only to the reasoning in *Willis,* it is the determination of the Court that the instant request would be granted.

Debtors have testified, as is supported by the record, that their primary motivation in opting for Chapter 13 was their desire to keep their family home, which does not *ipso facto* conflict with the requirement of "substantial and meaningful" payments required by the holding in *Willis.*

In the case at bar, Debtors appear to be making a substantial effort toward debt repayment, as indicated by Plaintiff's own allegation of infeasibility because of an inadequate "cushion" beyond Debtors' Plan payments. In this regard, although it is obvious that the payments do not appear to leave much room for unanticipatable expenses, the Court is constrained to note that the discrepancy between gross pay and budgeted take-home pay plus a budgeted substantial income tax refund raises some suspicion that income tax withholding is being used as a savings plan and all available income is not being applied to Chapter 13 payments. Even though this problem has not been raised by the State of Ohio, such a discrepancy in available funds could possibly be remedied by an amended Plan within *Willis* guidelines.

The court is constrained to delve into more serious factors, however, also not raised by Plaintiff's brief. Even though the statutes now contemplate the possibility of a joint filing by a husband and wife, in such cases the court must determine the extent to which the debtors' estates are to be consolidated, including whether assets are to be combined into a single fund to pay the creditors. See 11 U.S.C. § 302(a), (b). Such an analysis involves as relevant factors the extent of both jointly held property and of jointly owed debts. After such a determination, a relevant factor reflecting upon the question of bad faith necessarily is the ultimate purpose of the Chapter 13 process; namely, the right to a discharge, particularly in a composition case. 11 U.S.C. § 1328. As pointed out in *Willis,* there is a rational connection (even though not expressed in the statutes) between the interpretation of bad faith and educational loan discharges in Chapter 13 and the question of a hardship discharge under 11 U.S.C. § 523(a)(8)(B) and 11 U.S.C. § 1328(b), be-

cause failure of the Chapter 13 process thereby forcing a debtor to seek an order for relief in Chapter 7 renders hardship justiciable in the liquidation context.

The legislative history leading to case consolidation, nevertheless, contemplates the only purpose as ease and efficiency of administration, and not as a device to prejudice either the debtors or the creditors. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 321 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, Chapter 3—Case Administration; 9 Bkr—L.Ed. § 82:16.

Since Anita is contributing no funds for the payment of creditors and the student loan is not a joint obligation, the very purpose acknowledged by both Debtors (i.e., saving their investment in jointly owned real estate) demonstrates a proposal of payment of the educational loan not in good faith, because this Debtor is neither proposing to pay any amount on her educational loan nor acknowledging any responsibility for contributing to payment of the loan (less than a year old) under unchanged economic factors.

The conclusion is inescapable that in the instant case, the proposed Plan is only confirmable as to Thomas Edward Winston, Jr. and not as to Anita Gisele Wilkinson (except as to joint debts only) unless Anita waives a discharge of the student loan for the purpose of joint administration.

Inasmuch as the Plaintiff dwells at great length upon the necessity of a "substantial percentage" payment on a student loan to demonstrate "good faith," which is inconsistent with this Court's opinion in *Matter of Berry,* 5 B.R. 515 (1980); *Matter of Wourms,* 14 B.R. 169 (Bkrtcy.1981); and *State of Ohio Student Loan Commission v. Willis,* 24 B.R. 293 (1982) (as since similarly held by the United Circuit Court of Appeals for the Ninth Circuit *In Re Goeb,* 675 F.2d 1386, B.L.R. (CCH) ¶ 68702, 6 C.B.C.2d 1208 (9th Cir.1982)), it must be emphasized that the 5% payment offered by Thomas would be only evidentiary and not dispositive if the Parties were jointly liable on the student loan.

It is further pertinent to observe that the case of *Deans v. O'Donnell,* 14 B.R. 997 (D.C.1981), emphasized in behalf of the State, has been reversed by the Court of Appeals of the Fourth Circuit. In reversing the Bankruptcy Court, as affirmed by the District Court, the Court of Appeals (Case 81–2153) vacated the decision and remanded, saying that the legislative history of Sec. 1325(a) did not compel a 100 percent repayment to unsecured creditors on an education loan if the circumstances made such impossible.

ORDERED, ADJUDGED AND DECREED, that confirmation of the joint Plan must be, and is hereby denied.