**In re Robert Carl SEVERS, Grace Beth Severs, Debtors.**

**Bankruptcy No. 2–82–02807.**

United States Bankruptcy Court, S.D. Ohio E.D.

Nov. 15, 1982.

Edward D. Helvey, Asst. Atty. Gen., Columbus, Ohio, for Ohio Student Loan Comn.

John E. Hykes, Asst. Atty. Gen., Columbus, Ohio, for Ohio State University Student Aid.

Robert E. Bergman, Columbus, Ohio, for debtors.

Frank Pees, Worthington, Ohio, trustee.

## FINDINGS, CONCLUSIONS, AND ORDER ON OBJECTIONS TO CONFIRMATION

THOMAS M. HERBERT, Bankruptcy Judge.

This cause came on to be heard upon objections to confirmation filed by the State of Ohio, Ohio Student Loan Commission (Commission), and by the State of Ohio, Ohio State University Student Aid (OSUSA).

On July 30, 1982, debtors filed their Joint Petition under the provisions of Chapter 13 of the Bankruptcy Code. Debtors propose payments of $25.00 weekly for 33–37 months, depending upon whether a certain lien upon household furniture is avoided. Their proposal would result in a dividend of 25 percent to unsecured claimants. On September 1, 1982, a meeting was held pursuant to 11 U.S.C. § 341(a). Debtors were in attendance at the meeting and were examined concerning their affairs; none of their creditors appeared.

Also on September 1, 1982, the Chapter 13 Trustee reviewed the file and the evidence received at the § 341 meeting, and filed his report recommending that debtors' Chapter 13 plan be confirmed. Additionally on September 1, 1982, the Commission filed its objection to confirmation of the plan.

On September 7, 1982, the Court held the confirmation hearing required by 11 U.S.C. § 1324. The question of confirmation of the plan was continued pending a hearing upon the Commission's objection.

On September 8, 1982, OSUSA filed its objection to confirmation of the plan. That objection was consolidated with the Commission's objection and both were set for hearing. Counsel filing the objection for the Commission was present for the scheduled hearing, and stated to the Court that counsel for OSUSA had been replaced and that new OSUSA counsel was unable to attend the hearing. No explanation was offered for the failure to inform the Court of these circumstances prior to the hearing.

The Court finds that the objection of OSUSA to the confirmation of this Chapter 13 plan involves substantial issues of both fact and law, and that the questions presented cannot be properly resolved solely upon the document filed by OSUSA. In view of all of the foregoing, OSUSA's objection is overruled.

The Commission argued at the hearing that debtors proposed this Chapter 13 plan in bad faith, that the amount proposed to be paid to the Commission under the plan does not at least equal the amount the Commission would receive in a liquidation pursuant to Chapter 7 of Title 11, and that the plan is not feasible due to debtors' inability to comply with its terms. These issues will be addressed separately.

### BAD FAITH

The Commission contends that debtors do not propose the making of "substantial and meaningful payments to the unsecured creditors," that they are not making their "best efforts," and that the 25 percent dividend to unsecured creditors "is, as a factual matter, an indication of bad faith."

The Commission offered no evidence at the hearing, and did not argue that the testimony adduced by debtors was unworthy of belief. That testimony established that debtors were seeking Chapter 13 relief because they had an earnest desire to pay as many of their debts as possible, that they

have thus far made three regular payments and expect to continue so doing, that Mr. Severs is regularly employed at S.C.M. Allied Egry, and that he has in the past been able to hold two jobs simultaneously.

Debtors' sworn Chapter 13 statement shows a combined monthly spendable income of $1,010.50, and monthly expenses of $900.00. Payments into the plan are calculated at $107.50 per month leaving debtors with a monthly "cushion" of $3.00. Severs testified, however, that since his wife has now recovered from the effects of a very difficult pregnancy, he is seeking a second job to supplement their income and expects to find one soon.

Debtors have two children and, except for Mrs. Severs' pregnancy-related illnesses, are in good health. Mrs. Severs helps with family expenses by baby-sitting, and the record shows that this couple makes a concerted effort to live sensibly and substantially within their means. Debtors' unsecured debts total $9,570.58, of which $208.02 represents obligations other than student loans or Mrs. Severs' medical bills for her last pregnancy.

11 U.S.C. § 1325(a)(3) provides that a Chapter 13 plan must be "proposed in good faith." In making such a determination, courts have used various phrases to describe that conduct which debtors must evidence in order to meet the statutory requirement. Although the enactment does not employ such terms, courts have searched for a debtor's "best effort," and have attempted to decide whether "substantial payments" or "meaningful payments" are proposed in light of the record before them. See, e.g., *In re Campbell,* 3 B.R. 57 (Bkrtcy.S.D.Cal. 1980); *In re Iacovoni,* 2 B.R. 256 (Bkrtcy.D. Utah 1980); *In re Cook,* 3 B.R. 480 (Bkrtcy. S.D.W.Va.1980); *In re Schongalla,* 4 B.R. 360 (Bkrtcy.D.Md.1980); *In re Madden,* 1 Collier Bankr.Cas.2d (MB) 1093 (Bkrtcy.S.D. Or.1980); *In re Bloom,* 3 B.R. 467 (Bkrtcy.C. D.Cal.1980); *In re Montano,* 4 B.R. 535 (Bkrtcy.D.D.C.1980), *aff'd* 13 B.R. 997 (Dist. Ct.D.D.C.1981), *aff'd sub nom. Barnes v. Whelan (In re Whelan),* 689 F.2d 193 (D.C. Cir.1982); *In re Hall,* 4 B.R. 341 (Bkrtcy.E.

D.Va.1980); *In re Anderson,* 3 B.R. 160 (Bkrtcy.S.D.Cal.1980); *In re Johnson,* 5 B.R. 40 (Bkrtcy.S.D.Ohio 1980).

A common thread in the cases researched is the simple question of whether the debtor is doing the best he can to attend to his obligations under the circumstances. *In re Scher,* 12 B.R. 258 (Bkrtcy.S.D.N.Y.1981); *In re Cloutier,* B.R. 584 (Bkrtcy.D.Colo. 1980); *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982). An obviously important aspect of reaching a conclusion upon that issue is the trial court's determination of the credibility of the evidence presented, including particularly testimony from debtors which is unchallenged and uncontroverted.

The Commission places great emphasis upon its assertion that no Chapter 13 plan which contains a 25 percent dividend to unsecured creditors should ever be found to have been proposed in good faith. Congress did not impress the Bankruptcy Code with such a requirement, and it would be improper for this Court to now legislate such an inflexible rule. *Whelan, supra; Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir.1982).

As stated in *St. Luke Parish Federal Credit Union v. Wourms (In re Wourms),* 14 B.R. 169, 171 (Bkrtcy.S.D.Ohio 1981):

> It is important to note, however, that there are no mathematical formulas to calculate good faith, and the amount of a debtor's contribution to a Chapter 13 plan is merely one factor among the factual considerations to determine good faith.

Nevertheless, the Commission argues that unless substantial and meaningful payments are proposed for unsecured creditors, there can be no finding of good faith. And, since under no circumstances can a 25 percent dividend constitute such payments, the plan proposed in the instant case cannot be confirmed. This is merely a different way of urging the same result—that this Court legislate a rule which Congress clearly chose not to enact.

Aside from some cases involving zero or minimal dividend plans, most courts have

hesitated to promulgate boiler-plate rules concerning the determination of good faith. *Tenney v. Terry (In re Terry),* 630 F.2d 634 (8th Cir.1980). "[G]ood faith is an amorphous concept, largely determined by factual inquiry." *Wourms, supra.* See, also, *In re Goeb, supra,* wherein the Court ruled that "§ 1325(a)(3) does not impose a substantial-repayment requirement," and stated further that "though it may consider the substantiality of the proposed repayment, the Court must make its good-faith determination in light of *all* militating factors." (Emphasis *sic*). See, *Deans v. O'Donnell, supra.*

It has been proposed by some courts, and suggested strongly by others, that evidence of "bad faith" is necessary to refute the debtor's evidence of good faith. *Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426, 432 (7th Cir.1982), somewhat tentatively offers these guidelines for consideration:

(1) Does the proposed plan state [debtor's] secured and unsecured debts accurately?

(2) Does it state [debtor's] expenses accurately?

(3) Is the percentage of repayment of unsecured claims correct?

(4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?

(5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors," *In re Beaver,* 2 B.R. 337, 340 (Bkrtcy.S.D.Cal.1980)?

Noting that "the panel believes that . . . a debtor's repayment program should be related to his ability to make payments out of future income," the Bankruptcy Appellate Panel for the 9th Circuit stated:

In the instant case, the appellant has argued the existence of two intertwining indicia of a lack of good faith on the part of the Slades. First, the three-year payout to unsecured creditors under the debtors' plan of arrangement represents only a nominal percentage of the total amount owed such creditors. Second, by utilizing the Chapter 13 device, Mr. Slade

will be able to obtain the discharge of a debt which would otherwise be nondischargeable under Chapter 7 of the Bankruptcy Code.

Taken individually, neither of these factors would necessarily be a sufficient ground for finding bad faith on the part of a debtor. The only absolute minimum payout required under Chapter 13 is "the amount that would be paid . . . if the estate of the debtor were liquidated under Chapter 7 of [the Bankruptcy Code]." . . . Similarly, the fact that the Code specifically allows the discharge of debts under Chapter 13 which are not dischargeable under Chapter 7 would preclude a finding of bad faith based merely upon the existence of such debts among the liabilities of an erstwhile Chapter 13 debtor . . . *Bank of America v. Slade (In re Slade),* 15 B.R. 910 (Bkrtcy.App. 9th Cir.1981).

■ Based upon the sworn statements filed and the testimony in this case, there has been no evidence of bad faith adduced in this proceeding, and the Court is satisfied that debtors have proposed their Chapter 13 plan in good faith within the meaning of 11 U.S.C. § 1325(a)(3).

### CHAPTER 13 vs. CHAPTER 7

The Commission urges that the plan at bar should not be confirmed because it proposes to pay the Commission less than it would receive under a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4) provides that the Court shall confirm a plan if:

The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed secured claim is not less than the amount that would be paid *on such claim* if the estate of the debtor were liquidated under Chapter 7 of this title on such date; (Emphasis added).

In *In re Rimgale, supra,* the Court discusses the view advocated herein by the Commission and concludes:

What is to be compared is the total of the payments to the creditor, discounted to

present value, and the amount the creditor would receive in a straight liquidation. "[T]he amount that would be paid *on such claim* if the estate of the debtor were liquidated" (emphasis added) does not include additional amounts that a creditor may be able to collect *after* a liquidation, if he can keep the judgment alive. (Emphasis *sic*).

To the same effect see *In re Hurd*, 4 B.R. 551 (Bkrtcy.W.D.Mich.1980); *Matter of Cole*, 3 B.R. 346 (Bkrtcy.S.D.W.Va.1980); *In re Jenkins*, 4 B.R. 278 (Bkrtcy.D.Colo.1980); *In re Syrus*, 12 B.R. 605 (Bkrtcy.D.Kans. 1981).

The Commission contends, however, that it does not propose that the mere presence of the Chapter 13—Chapter 7 dichotomy "should be the cause of a denial to confirm." Rather, argues the Commission, where such a debt represents a "substantial portion of the debtor's total indebtedness," the choice of Chapter 13 over Chapter 7 by that debtor "is an indication of lack of good faith and the plan should be denied confirmation."

■ It is the Court's opinion that such linedrawing in this area would be unwise, and could result in inconsistent and unjust results from the standpoint of both debtors and creditors. In viewing all of the evidence available to it, a court should consider each case of this nature upon its individual merits. Of particular importance is the Court's conclusion regarding the credibility of a debtor's testimony upon the reason for his choice of Chapter 13. To be sure, the testing of that credibility must involve all available factors, including the Court's awareness that some debtors would seek to improperly deprive a most substantial creditor of its rights through the device here suggested by the Commission. The prescribing of a flat rule, however, to be applied to all litigants in all cases, would run contrary to the obvious intent and purpose of the Chapter 13 legislation.

From all of the evidence before the Court in this case, it has not been established that these debtors chose Chapter 13 because they wanted to deny the Commission its recovery under Chapter 7. The testimony of a sincere desire to repay as much as possible of all of their debts was believable, and was completely uncontroverted.

## FEASIBILITY

The Commission's final ground for its objection to confirmation of this plan is that the plan is not feasible. 11 U.S.C. § 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan" before confirmation shall occur. The Commission's main contention in support of this portion of its argument is that the debtors will have only $3.00 more coming in each month than they will be obliged to expend under the proposed plan.

■ Feasibility is another of those tests which Congress left largely to the sound discretion of bankruptcy courts. It is clear that if more is proposed to be spent under a plan than the debtors have available for such purpose, the plan should be found unfeasible. Likewise, if a debtor's medical history, job experience, family health, criminal propensity, or other such variables loom as reasonably insurmountable barriers between plan and reality, the proposal will likely fail the test of feasibility. But in the cause at bar, the only evidence relating to the feasibility of this plan concerns Mrs. Severs' health and the near parity in income and outgo. As to the former, the record is undisputed that Mrs. Severs' physical condition is good except during pregnancy. In answer to the latter, Mr. Severs testified that he is now free to resume working at two jobs in order to supplement the family's income. In viewing all of the evidence in the instant record, including particularly the uncontroverted testimony by Mr. Severs, the Court is convinced that this proposed plan should not be denied confirmation based upon a lack of compliance with 11 U.S.C. § 1325(a)(6).

The Objection To Confirmation filed herein by the Commission must be overruled, and an order confirming this proposed Chapter 13 plan shall issue.

IT IS SO ORDERED.