The FIRST NATIONAL BANK OF DAYTON, OHIO, Plaintiff,

v.

Myra M. ROBINSON, George Ledford, Trustee, Defendants.

In the Matter of Myra M. ROBINSON, Debtor.

Bankruptcy No. 3–81–02335.

Adv. No. 3–81–0605.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 29, 1982.

James F. Cannon, Dayton, Ohio, for debtor.

John M. Slavens, Dayton, Ohio, for plaintiff.

George Ledford, Englewood, Ohio, for trustee/defendant.

PRELIMINARY PROCEDURE

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court upon "Complaint of Objection to Chapter 13 Plan and Complaint for Determination of Dischargeability" filed by The First National Bank of Dayton, Ohio (hereinafter the Bank) on 16 September 1981. The Court held a pretrial on 22 October 1981 to consider the matter, and on 2 December 1981 approved the parties' pretrial statement after denying Debtor's Motion to Dismiss by Memorandum Decision issued the same date. The Court then heard the matter on 26 April 1982. The parties subsequently submitted legal memoranda. The following decision is based upon the evidence adduced at the hearing, the parties' memoranda, and the record.

## FINDINGS OF FACT

Debtor filed a Petition for Relief under 11 U.S.C. Chapter 13 on 11 August 1981. Debtor's proposed Chapter 13 Plan provides for approximately thirty percent payment to unsecured creditors.

The parties have stipulated the following facts as "uncontroverted":

Defendant Robinson obtained a Master Charge Card from Plaintiff on or about March 18, 1980. As of January, 1981, her approximate balance on the account was $483.00; as of February, 1981, $490.31; as of March, 1981, $502.41; as of April, 1981 $509.83; as of May, 1981 $466.17; as of June, 1981 $769.41; as of July, 1981 $1,085.79; as of August, 1981 $1,588.50; as of September, 1981 $2,147.70. Debtor used the Master Charge to make all purchases on her account and is indebted to The First National Bank for $2,179.26 plus interest and costs. On May 8, 1981 Defendant was contacted by Plaintiff who requested payment and informed Defendant she was over-line and past due and her card privileges were suspended. On May 14, 1981, Plaintiff sent a certified letter to Defendant informing her that her card was revoked. On June 22, 1981 in a telephone conversation Defendant claimed she had given her card, on or about May 15, 1981, to a friend and Defendant further stated she made no purchases after said date. On July 22, 1981 Defendant recanted and admitted to Plaintiff that all the charges on the account were made by her and that she had falsely claimed the card to have been lost or stolen.

It is undisputed that Debtor misused her credit arrangement with the Bank. Despite Debtor's admitted awareness of her $500.00 credit limit, Debtor made approximately sixty purchases (all for less than fifty dollars) in the month of April, 1981. Although Debtor testified that the unusual number and amount of purchases were necessitated by personal credit difficulties, the Court notes that Debtor's Schedules indicate that she was gainfully employed for the eight years prior to her Petition filing as a "computer systems analyst" with the Dayton Power & Light Company.

## DECISION AND ORDER

In this case, there can be little doubt that in a liquidation proceeding the instant debt would be nondischargeable under 11 U.S.C. § 523(a)(2)(A). The facts indicate that Debtor knowingly made repeated purchases for non-necessities which considerably exceeded her credit limit and were made after revocation of her credit arrangement. The facts further indicate, and the Court finds, that Debtor made the instant purchases without an intention of payment, and that such conduct is tantamount to a determination of nondischargeability under 11 U.S.C. § 523(a). See this Court's opinion in *First National Bank of Dayton, Ohio v. Wright,* 8 B.R. 625 (1981).

The basic legal issue before the Court therefore is whether the attempted discharge under 11 U.S.C. § 1328(a) of otherwise nondischargeable debt justifies denial of confirmation of Debtor's Chapter 13 Plan under 11 U.S.C. § 1325(a)(3) which requires that a Plan be proposed in good faith to be confirmable.

It is the determination of the Court that the facts of the instant case mandate a determination that the instant Plan is proposed in bad faith and that confirmation should accordingly be denied under 11 U.S.C. § 1325(a)(3).

The Sixth Circuit Court of Appeals recently elaborated the concept of good faith in *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427 (1982), as follows:

The "good faith" requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the Debtor's conduct before confirming a plan. . . . The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpreta-

tion to the good faith requirement. *See, e.g., Matter of Kull,* 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.")

One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.

Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest, as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract.

It is the finding of the Court that the conduct at issue herein falls within the parameters of both "dishonesty" and "questionable conduct" as contemplated by the Court of Appeals. In particular, the Court notes that Debtor's conduct was admittedly knowing and undertaken without any apparent intention of repayment of the subject debt. The Court also notes that such facts constitute evidence of bad faith beyond the fact of mere numerical reduced payment, which alone would not justify a determination of bad faith. See this Court's opinions in *St. Luke Federal Credit Union v. Wourms,* 14 B.R. 169 (1981); and *Matter of Berry,* 5 B.R. 515, 6 B.C.D. 649 (1980). In essence, the Court does not tolerate the discharge of debt tactically incurred shortly before invocation of the Chapter 13 process when such debt would be nondischargeable under Chapter 7 because of apparent dishonesty or questionable conduct.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that confirmation of Debtor's proposed Chapter 13 Plan is DENIED; and Debtor is granted two weeks leave to file an amended Plan to offer 100% payment on the subject debt.