36 B.R. 663 (1984)
In the Matter of Phillip Lawrence WRIGHT, Debtor.
CIRCLE MANAGEMENT SERVICES, INC., Plaintiff,
v.
Phillip Lawrence WRIGHT and George W. Ledford, Trustee, Defendants.
Bankruptcy No. 3-83-00046, Adv. No. 3-83-00118.
United States Bankruptcy Court, S.D. Ohio, W.D.
January 18, 1984.
*664 Richard G. Knostman, Dayton, Ohio, for plaintiff.
Charles B. Fox, Thomas Timothy Dempsey, Dayton, Ohio, for debtor.
George W. Ledford, Englewood, Ohio, Trustee.

DECISION AND ORDER
CHARLES A. ANDERSON, Bankruptcy Judge.

PRELIMINARY PROCEDURE
This matter is before the court upon a complaint filed 18 February 1983, as amended on 29 March 1983, by Circle Management Services, Inc. (CMS) against Phillip Lawrence Wright, (the Debtor), et al.; the Answer filed by Debtor on 18 May 1983; the Case record and the evidence as stipulated and incorporated in a pretrial order entered 12 September 1983 and adduced at the trial on 17 October 1983.

FINDINGS OF FACT
The Debtor/Defendant filed a voluntary petition for relief pursuant to Chapter 13 of title 11, United States Code on 12 January 1983, proposing a Plan to pay over a period of 36 months the present value of all allowed secured claims and an amount not less than 3% to each allowed unsecured claim, to be funded by monthly payments of $250.00 each month. Seven creditors were scheduled with claims totalling $93,658.00, of which the total of $87,051.00 was unsecured. The major unsecured debts scheduled were $36,002.00 to CMS; federal income taxes of $3882.00 for 1980-1981 (payroll taxes), and $48,558.00 for 1970, 1976, 1978, 1979 (personal income taxes). Debtor lists employment as an accountant with take home pay $650.63 every two weeks. He previously was self-employed as a sales representative. He has three minor children dependents and a spouse who earns $1100.00 monthly. His submitted family budget lists monthly living expenses, not including debts to be paid under the plan, in the total amount of $2138.00.
The stipulation of uncontroverted facts by the parties reads, as follows:
"(a) That on or about September 28, 1977, Defendant, Phillip Lawrence Wright, was convicted of Grand Theft (Case No. 77-CR-931 Montgomery County, Ohio) for fraudulently obtaining over $20,000 from the Plaintiff as follows: (1) that in between February 26, 1976 and August 1, 1976, Plaintiff was requested by said Defendant to supply and payroll temporary personnel to work at H & H Broadcasters, Inc. dba WELX and WHBM radio stations. (2) that said Defendant during this time period advised Plaintiff that he would be supplying his own personnel and did in fact sign time cards and pay vouchers for eight individuals. (3) that Plaintiff did pay the salaries for these individuals based upon the representations of said Defendant. (4) that in truth there never was [sic] any individuals working for said Defendant and that he sign [sic] all the payroll checks and did use the proceeds therefrom for his own personal use with the exception of some $200 to $300 which was paid to various personnel by Defendant.
(b) That on or about November 22, 1977, said Defendant received shock probation with the stipulation that he was to make restitution to the Plaintiff and that between November 22, 1977 and January 1, *665 1983, he made 15 monthly payments totalling $1,875 and still owes to Plaintiff approximately $35,996.69, which sum has been included in Defendant's Chapter 13 Plan."
Upon a guilty plea, the order in the criminal action sentenced the Debtor to imprisonment for "not less than two years nor more than five years", effective October 6, 1977.
Jack E. Circle was sole stockholder of CMS, which he has since sold, netting only $10,200.00 therefrom. He testified that he has retired and his only current income is social security benefits. The debt owed by the Debtor was reduced to judgment in the state court on 21 January 1977; and the Chapter 13 petition was precipitated by a wage garnishment upon the judgment. Upon sale of his corporation after the Chapter 13 filing, Jack E. Circle became assignee of the judgment and is now the real party in interest. The restitution funds are desperately needed by him for living expenses, especially mortgage payments on his residence.

DECISION
The Debtor is obviously suffering from an impossible and imponderable financial situation arising from his previous business dealings, further complicated by the shock probation order, which leave insufficient economic means for the bare subsistence of himself and family. In the same vein, the failure of Debtor to make restitution as ordered by the state court has, in effect, placed in jeopardy payments by the victim (Jack E. Circle) on his home mortgage.
As a matter of factual interpretation, this court has on numerous occasions concluded that if a debtor meets the mandatory requirement of 11 U.S.C. § 1325(a)(4) that the plan be in the "best interests" of the unsecured creditors, good faith is not determined by the size of debtor's Chapter 13 contribution. Instead, there must also be submitted evidence aliunde of actual "bad faith". See decision by this court in Matter of Berry, 5 B.R. 515, 6 B.C.D. 649, 2 C.B.C.2d 663 (Bkrtcy., S.D. Ohio 1980). We have also repeatedly held there are no mathematical formulas to determine good faith. St. Luke Parish Federal Credit Union v. Wourms, 14 B.R. 169 (Bkrtcy., S.D.Ohio 1981).
The nature of the debts must be considered, nevertheless, if only nominal repayment is contemplated. See decisions by this court in Wright State University v. Novak, 25 B.R. 459 (Bkrtcy.1982); Turpin v. Maupin, 26 B.R. 987, B.L.D. (CCH) ¶ 69102 (Bkrtcy.1983); and Margraf v. Oliver, 28 B.R. 420 (Bkrtcy.1983) involving adjudicated fraud (confirmation denied unless 100% repaid to the injured class).
The facts now sub judice demonstrate a critical situation confronting the Debtor who needs financial rehabilitation desperately. The amount of his Plan contributions from his earnings do not reflect upon his good faith, in light of his meagre earnings. Rather, questions of public policy and plan feasibility must be addressed.
He obviously has not complied with the restitution terms of the shock probation granted by the state criminal court. In light of the time lapse between the date of conviction (October 6, 1977) and the date of filing under Chapter 13 (February 18, 1983), there may be some constitutional prohibition to revocation of the probation after the expiration of the term of the sentence of imprisonment (two to five years). This question, however, should remain within the sphere of the state court jurisdiction. See annotation in 13 A.L.R. 4th 1240.
The facts demonstrate a socio-economic situation endemic in the bankruptcy court context, illustrating that relief from an overwhelming financial crisis may affect the lives of a debtor and his or her family more than incarceration for a definite and relatively short term. In this case the difference may be between less than two years (with probation) and literally a normal life span (already more than six years) of misery.
Obviously, the threat of revocation for an obvious and admitted failure to comply with the terms of the shock probation order *666 reflects upon the feasibility of the plan payments of only 3% of the restitution debt. So long as the threat of revocation of probation is not resolved in the state court, the bankruptcy court should not make a finding that "the debtor will be able to make all payments under the plan and to comply with the plan", conformably to the mandate of 11 U.S.C. § 1325(b).
In addition to this lack of feasibility, there is the necessity of considering the public policy aspects of confirming a Chapter 13 plan which countenances and condones the discharge of a sentence for a criminal act against the citizens of the State of Ohio. The shock probation on condition of restitution contemplated a rehabilitation process in lieu of incarceration for two to five years. An order of the bankruptcy court confirming a plan for payment of less than 100% of the criminal court sentence, as a class, before payment to secured creditors and other unsecured creditors, defeats the very purpose of rehabilitation as contemplated by both the criminal law and the Chapter 13 process. See decision by this court in Matter of Gaston, 25 B.R. 571, B.L.D. (CCH) ¶ 68.940 (Bkrtcy. 1982).
The generality of the public policy concept, although subject to semantical abuse, finds support in the teaching of the United States Court of Appeals of this circuit, in its opinion in Memphis Bank & Trust Co. v. Whitman 692 F.2d 427, 9 B.C.D. 1140 (CA-6, 1982). Quoting from page 432, the court broadly opined, as follows:
"Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. See, e.g., Matter of Kull, 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.")
One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty."
The bankruptcy courts, despite the pervasive jurisdiction conferred, may interfere only as between private litigants to prevent the attempted abuse of the criminal process involving a bankruptcy court debtor; but, this court has repeatedly held that ". . . it should not be the function and purpose of the bankruptcy court to interfere with the jurisdiction of the state court in criminal prosecutions, in the absence of any showing of . . . the statutory criteria enunciated in aid of federal court jurisdiction by 28 U.S.C. § 2283." Lawson v. Boczonadi, 22 B.R. 100 (Bkrtcy.1982).
The crucial element now pertinent is that there is no evidence that the debtor has been discharged by the state court. Until such has been accomplished, the fact that the personal judgment obligation now held by Jack E. Circle may be theoretically dischargeable through the Chapter 13 process is immaterial to the question of confirmation of the plan now sub judice. Even if a confirmable plan should be submitted, it should be noted that the Chapter 13 process would afford a maximum debt extension of only five years.
Hence, confirmation of the proposed plan should be denied and the case dismissed *667 unless the debtor files a confirmable plan or a conversion to a proceeding under Chapter 7 of the Bankruptcy Code within two weeks.