In the Matter of Dennis L. ROSE, Diane Rose, Debtors.

HUNTINGTON NATIONAL BANK, Plaintiff,

v.

Dennis L. and Diane ROSE, Defendant.

Bankruptcy No. 3–83–02179(A).

United States Bankruptcy Court, S.D. Ohio, W.D.

June 25, 1984.

Lloyd D. Cohen, Dayton, Ohio, for debtors.

Lawrence T. Burick, Dayton, Ohio, for Huntington Nat. Bank.

George W. Ledford, Englewood, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

The Huntington National Bank [Huntington] objected on October 21, 1983, to the confirmation of the Chapter 13 debtors' proposed Plan, alleging that the Plan had not been proposed in good faith, as required by 11 U.S.C. § 1325(a)(3). Upon an Amended Complaint filed January 11, 1984 the matter was heard on March 13, 1984.

Huntington and debtors, Dennis L. Rose and Diane Rose, have been parties to several loan transactions, with the same loan officer representing Huntington throughout. It appears that all but the two most recent loans were repaid in full according to the loan agreements.

On March 11, 1983, Huntington lent debtors $1,054.27, to be repaid in 18 installments. This loan, secured by debtors' vehicle, appears to have been kept current until debtors filed their Chapter 13 petition on September 19, 1983, when $128.38 of the principal was due, according to Huntington's proof of claim.

On August 13, 1983, debtors arranged another loan from Huntington. This loan provides the basis for Huntington's instant complaint. The loan was unsecured and for the principal sum of $1,034.10 plus interest. Payments on it were to begin on September 13, 1983. None was made.

On September 15, 1983, after the loss of a second, parttime job by Dennis, debtors consulted with their attorney concerning their economic plight. This consultation resulted in the filing on September 19,

1983, of a voluntary Chapter 13 petition. Debtors listed $11,137 in secured debt and $6,920 in unsecured. Their combined monthly incomes were $1,090 and their monthly expenses were listed as $870. They propose to pay the $220 difference between income and expenses to the Chapter 13 Trustee monthly for three years. Under the Plan, unsecured claims are to be paid a 10% distribution.

The grounds for Huntington's bad faith objection to confirmation of the Plan are that the time proximity between obtaining the loan and filing in bankruptcy of just over one month with no payments made is too short and that debtors "puffed" their income on the loan application because on that application a second job was listed as providing $150 every two weeks but this income was not listed on the Chapter 13 petition. If the Court does approve the Plan, Huntington requests, in the alternative, that the Court require payment in full according to the terms of the August 13 loan agreement.

At the hearing, debtor Dennis testified that the second job was lost during the end of August because of scheduling conflicts and that this loss precipitated their filing in bankruptcy. He admitted to omitting $4500 in debts on the loan application because he "thought he could repay them." He added, though, that he dealt with the same loan officer who had approved his prior loans and that he told this officer that he had the same obligations as when he made his next-to-last application.[1] He further testified that after he obtained the loan, he purchased about $500 worth of carpeting. Debtors have since lost their mobile home.

## DECISION

In numerous decisions, this Court has concluded that the issue of good faith in the filing of a Chapter 13 Plan is a question of fact, with the burden of proof assigned to the objector to the proposed Plan. *Wright State University v. Novak*, 25 B.R. 459, 460 (Bkrtcy., S.D.Ohio 1982) and citations therein; *State of Ohio, Ohio Student Loan Commission v. Willis*, 24 B.R. 293, 9 B.C.D. 1252 (Bkrtcy., S.D.Ohio 1982) ("Such determination of [good faith] intent ... must be supported by evidence *aliunde* (though inclusive of the Court record itself) indicating that such bad faith subterfuge was indeed the Debtor's 'primary purpose'." at 24 B.R. 295); *Matter of Wright*, 36 B.R. 663, 665 (Bkrtcy., S.D. Ohio 1984). This Court has repeatedly opined that there are no mathematical formulas to calculate good faith, and the amount of the contribution to a Chapter 13 Plan is merely one factor in determining good faith. *See In re Wourms*, 14 B.R. 169 (1981). *See, also In re Hines*, 723 F.2d 333, 9 C.B.C.2d 1099, 11 B.C.D. 682 (3d Cir.1983) holding that the Chapter 13 debtors did not have affirmative burden, beyond the showing made in the report of the standing trustee, to show that their reorganization plan, which provided for only nominal payments to unsecured creditors, was filed in good faith.

*In Memphis Bank and Trust Co. v. Whitman*, 692 F.2d 427, 9 B.C.D. 1140, B.L.D. ¶ 68901, 7 C.B.C.2d 727, (6th Cir. 1982), the Sixth Circuit indicated that bankruptcy courts have and must exercise considerable discretion to avoid apparent abuses of the Chapter 13 process. The legal standard enunciated in *Whitman* at 431–2 is "dishonest conduct" to deny confirmation, as follows:

"The 'good faith' requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are

---

**1.** As noted above, the next-to-last loan was made on March 11, 1983. According to the proofs of claims filed herein, at least $1600 of the omitted debts had been incurred prior to March 11. There is no evidence before the Court about whether these amounts had been listed on debtors' prior loan application(s). Since Huntington bears the burden of proof, the loan officer is imputed to have had knowledge of $1600 of the omitted debts. Thus, debtors omitted $2900 in unsecured debts from the loan application.

subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *See, e.g., Matter of Kull,* 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.")

"One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. *When the debtor's conduct is dishonest, the plan simply should not be confirmed.* Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty."

"Another way to deal with the problem *when the conduct is questionable but is not shown to be dishonest,* as the Bankruptcy Court found it to be in the instant case, is to *require full payment in accordance with the contract.*" [2] [emphasis added.]

The Court notes that the $1034 loan in question from Huntington represents about 15% of debtors' total unsecured debts listed and about 6% of total debts listed. This loan, while not insignificant, does not then represent a substantial portion of total debts. Debtors propose to pay $220 every month for three years to the Chapter 13 Trustee for repayment of their debts. This amount represents 20% of their combined salaries and, more importantly, is the full excess of their salaries over their expenses. No more could be asked of them.

■ Huntington contends that debtors "puffed" their incomes on the loan application. But any discrepancy between the incomes listed on the loan application and on the Chapter 13 petition was explained by the loss of Debtor's second job. Huntington made no showing that this explanation was either inadequate or false.

The unexpected loss of the second job after obtaining the loan likewise explains the close time proximity of one month between making the loan and filing in bankruptcy. This *unexpected* occurence distinguishes this case from this Court's opinion in *First National Bank of Dayton, Ohio v. Robinson,* 26 B.R. 377, B.L.D. (CCH) ¶ 69,141 (Bkrtcy., S.D. Ohio 1982), wherein the Court wrote, at 26 B.R. 379: "In essence, the Court does not tolerate the discharge of debt *tactically* incurred shortly before invocation of the Chapter 13 process when such debt would be nondischargeable under Chapter 7 because of apparent dishonesty or questionable conduct." (emphasis supplied.)

Huntington's objections as to puffed income and the close time proximity do not constitute dishonest conduct per se and Huntington did not, in its pleadings, raise the issue of the debtors' omission of $2900 in unsecured debts.

It is important to note that Huntington has not proven any conduct which would render its debt not dischargeable in bankruptcy.

Remaining for the Court to consider is the issue of whether debtors' conduct was "dishonest" or "questionable" so as to provide the basis for the Court requiring full

---

**2.** This last sentence provides a basis for Huntington's request that the Court require full payment pursuant to the terms of the loan agree- ment. The corresponding standard to be found before ordering full payment is "questionable conduct."

repayment of Huntington's last loan pursuant to the terms of the loan agreement.

■ While the Court is satisfied with debtors' explanations as to the alleged income puffing and the time proximity, thus rendering these acts neither dishonest nor questionable, there is, however, ample reason to pause over the omission of $2900, or about 40% of total unsecured debts when negotiating the loan. Although Huntington never properly raised this issue in the pleadings and did not sustain the burden of proof as to nondischargeability in a Chapter 7 case, it came to the Court's attention during the trial. Such significant omissions could easily raise the spectre of questionable conduct, under the broad Sixth Circuit rule, even considering the long-term business relationship between debtors and Huntington.

Although Huntington has not carried the burden of proof necessary to establish that the debt is not dischargeable, the evidence does establish that Huntington's claim rises higher than the other general unsecured claims. Debtors should not be enabled to profit by retaining equity in property and thereby profit from their conduct on the eve of filing by paying Huntington only 10% of its claim (on a parity with the other unsecured claims). By the same token, "good faith" does not equate to the impossible. An analysis of their income and budget for bare necessities demonstrates that there is no possibility of paying Huntington's entire claim. They should not be expected as a matter of good faith to pay more to a Chapter 13 plan than the liquidation value of their meagre assets.

IT IS HEREBY ORDERED that the proposed Plan treating Huntington in the same class as other unsecured creditors be not confirmed because of the rule in this Circuit which constrains the bankruptcy courts to refuse "to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13."

IT IS FURTHER ORDERED, that Debtors are granted two weeks either to propose an Amended Plan or to convert the case to a liquidation case pursuant to Chapter 7 of the Bankruptcy Code.