In re Gilbert SAN MIGUEL and Blanca Estella San Miguel, Debtors.

In re Mario Eduardo LOPEZ, and Betty Jean Lopez, Debtors.

In re Eric Michael RIVERA, and Miriam (NMN) Rivera, Debtors.

Bankruptcy Nos. 84 B 0524 G, 84 B 0531 G and 84 B 0532 G.

United States Bankruptcy Court, D. Colorado.

June 27, 1984.

Edward I. Cohen, Denver, Colo., for all debtors.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

The above matters were consolidated for hearing with respect to the good faith of proposed Chapter 13 Plans. Each of the plans proposes to pay unsecured creditors minimal payments of $1.00 each over a period of sixteen (16) months. The primary reason for selecting a Chapter 13 approach as opposed to Chapter 7 is to spread the attorney's fees over the sixteen month period. Otherwise, the individual circumstances of each case vary to one degree or another.

No creditor objected to the proposed plan in any of these cases. However, the Court, *sua sponte,* raised the issue of good faith due to the very short duration of each plan and the minimal payment afforded to unsecured creditors.

Each of the debtors is represented by the same counsel, Ed Cohen. Mr. Cohen argues forcefully and persuasively that the debtors are economically deprived persons who are entitled to a fresh start and whose good faith ought not to be questioned simply because they choose the avenue of Chapter 13 rather than Chapter 7. He argues that each of the proposed plans constitutes the best efforts of the debtors, that payments to creditors are capitalized over the sixteen month period to receive as much as they would receive in any Chapter 7 liquidation and that the plans were necessitated so that attorney's fees could be paid over the period of the plan rather than in advance as, he contends, is customarily required by lawyers who accept Chapter 7 debtors.

The Chapter 13 Trustee, while not objecting to any of the proffered plans, does point out that in a liquidation the creditors will receive their money upon liquidation. In the Chapter 13 adjustment, the payments are spread out over a period of many months, and the creditors always run the risk of default under the plans. Further, the Chapter 13 Trustee suggests that if debtors are to receive the advantages of Chapter 13, they should be expected to make a greater effort to comport with the Congressional intent of repayment to creditors, generally adhering to the Congressionally sanctioned period of 36 months as the normal duration of a plan.

Mr. Cohen counters that under the circumstances of the three cases presented herein, there is no real "advantage" to Chapter 13 as opposed to Chapter 7, except for the payment of attorney's fees over a period of time. He further states that, in his experience, no greater creditworthiness results from Chapter 13 than from Chapter 7.

A review of each of these three cases should be accomplished and examined in light of the history and purpose of Chapter 13.

RIVERA

Mr. and Mrs. Rivera owed approximately $10,000.00 in unsecured indebtedness. Mr. Rivera is an airman first class in the United States Air Force. His enlistment terminates in 18 months. He does not know if he will be eligible to reenlist, or whether he will desire to do so. He occupies an administrative position, and there is no indication that future raises, bonuses or promotions will be forthcoming in the foreseeable future.

The schedules submitted by the parties appear to be complete and accurate. There are no debts which are alleged to be non-dischargeable in liquidation. The combined total net income of the parties is $1,002.00 per month. Their budget reflects expenses in the amount of $948.00. Mr. and Mrs. Rivera have proposed to pay the sum of $50.00 per month for a period of 16 months into the Plan so that attorney's fees in the amount of $690.00 can be defrayed over that period of time. Twenty-two unsecured creditors will receive $1.00 each. Mr. Rivera testified he feels this is their best effort.

LOPEZ

Mr. and Mrs. Lopez moved from Albuquerque, New Mexico to Denver in August, 1983. Mr. Lopez has been employed by Continental Airlines for 14 years. He was given 72 hours to move to Colorado or lose his job. Mrs. Lopez is employed by Sears, Roebuck & Co. as a customer service clerk.

Upon arriving in Colorado, the debtors purchased a home. Continental Airlines then declared bankruptcy and Mr. Lopez' salary was cut by one-half.

Several attempts were made to secure legal representation for the Chapter 7 liquidation. Mrs. Lopez testified that all lawyers whom they contacted wanted their fee in advance, together with the $60.00 filing fee. They contacted Mr. Cohen who suggested the Chapter 13 approach, with attorney's fees of $690.00 to be paid over the period of the plan. The schedules submitted on behalf of Mr. and Mrs. Lopez appear to be accurate and complete. There are no debts allegedly non-dischargeable in a liquidation. The plan provides for $1.00 to each of 8 unsecured creditors, extinguishing an indebtedness of $6,014.03. Payments of $50.00 per month are contemplated under this plan.

No changes in income are anticipated in the near future. Mrs. Lopez felt the proposed plan over 16 months was their best effort. The combined net monthly income of these debtors is $1,451.00. Their budget reflects expenses in the amount of $1,399.00. Mr. and Mrs. Lopez have three children. One daughter, age 16, desires to further her education beyond high school. The debtors wish to assist her, financially, in this regard. The daughter is reluctant to make plans for further schooling until it is determined that the parents will be free to assist her after the 16 month period.

The total secured indebtedness of these debtors consists of one secured creditor,

secured by a first deed of trust on the family home, in the amount of $66,930.36. The value of the home is $71,610.00. This creditor will be paid outside the plan.

SAN MIGUEL

Mr. and Mrs. San Miguel have four children living with them, three of whom were Mr. San Miguel's children by a previous marriage. At the time of filing the Chapter 13 proceeding, Mr. San Miguel was in debt to the Department of Social Services in the approximate amount of $1,000.00 as a child support arrearage. He now has custody of the children. No support monies are owed directly to the mother. Nevertheless, Mr. San Miguel indicated he knew this debt may not be dischargeable. He intends to amend the Chapter 13 Plan to specifically provide for this indebtedness.

Mr. San Miguel is now on unemployment as a result of a back injury. However, this does not materially affect the scheduled income of the parties. Their combined net monthly income is approximately $1,689.00, with a budgeted expense of $1,610.00.

Mr. San Miguel indicated that, as experienced by the two previous debtors, his efforts to secure representation without the payment of advance fees for a Chapter 7 liquidation were futile. The Chapter 13 proceeding was chosen as a means to pay attorney's fees over the period of the plan. They propose to pay $75.00 per month into the plan for the 16 month period. This will discharge unsecured indebtedness of $4,021.60 to 6 unsecured creditors, including the aforementioned support obligation.

## OPINION

No explanation was given by Mr. and Mrs. San Miguel for choosing not to exceed 16 months in their plan. No evidence is presented to indicate an inability to contribute funds beyond that period. In the case of Mr. Rivera, there is no evidence to indicate what type of employment or earnings he may achieve after his enlistment expires in 18 months. The only explanation given by Mr. and Mrs. Lopez for not exceeding 16 months was that they wished to help their daughter with her education.

In this District, we are guided in our determination of "good faith" by *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983). While the Tenth Circuit set forth various different criteria to be reviewed, the basic question to be determined is whether the plan constitutes an "abuse of the provisions, purpose or spirit of Chapter 13." If it does not, the plan should be confirmed. *Flygare v. Boulden, supra.*

Prior to the *Flygare* decision, there were at least two other interpretations of "good faith" requirements. The first, represented by *In re Iacovoni*, 2 B.R. 256 (Bankr. Utah 1980), required "substantial or meaningful" repayment to creditors in a Chapter 13 adjustment. A fixed percentage was not required, but it was clear that a payment which only equalled the debtor's non-exempt assets was not "meaningful." Other decisions in other jurisdictions fixed a percentage of repayment before the plan could be considered to have been proposed in "good faith." The most common percentage repayment was 70%. See, *In re Raburn*, 4 B.R. 624, 6 B.C.D. 453 (Bankr. M.D.Tenn.1980).

A second category of cases attached little or no independent meaning to the "good faith" requirement. These decisions have looked only to the requirement of 11 U.S.C. § 1325(a)(4) that the creditors receive as much as they would have received under Chapter 7. See, *In re Sadler*, 3 B.R. 536 (Bankr.E.D.Ark.1980).

The Tenth Circuit Court of Appeals, in *Flygare*, rejected both of these approaches and adopted the "middle of the road" approach, borrowing from *In re Estus*, 695 F.2d 311 (8th Cir.1982). With respect to minimum payment plans, the *Flygare* court stated that "a *per se* minimum payment requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of Chapter 13 and is unwarranted." *Flygare v. Boulden, supra,* at p. 1348.

The Tenth Circuit, however, did not intend that plans which pay to creditors at least what would be afforded by a Chapter 7 liquidation should be summarily rubber-stamped, as being in "good faith." This would be equivalent to the second category of cases, which the court rejected in *Flygare*. With respect to percentage of repayment, the court adopted the reasoning of *In re Estus*, as follows:

"Certainly an important factor the courts must weigh in their analysis is the percentage of payment to unsecured creditors which the plan proposes. A low percentage proposal should cause the courts to look askance at the plan since repayment is one purpose of a Chapter 13 plan. However, the amount of the proposed repayment to unsecured creditors is only one of the many factors which the courts must consider in determining whether the plan meets the statutory good faith requirement. Other factors or exceptional circumstances might exist which would preclude a finding of bad faith even though only a nominal repayment to unsecured creditors is proposed." *In re Flygare, supra*, at 1347.

The most direct language dealing with plans of limited duration is set forth in *In re Estus, supra*. There, the plan was of only 15 months duration with payments of $250.00 per month. No payment was to be made to the unsecured creditors. The Eighth Circuit Court of Appeals stated:

"A cursory examination of several factors of the plan in the instant case reveals an apparent lack of good faith. First, the debtors' plan is scheduled to run for only fifteen months instead of the more common period of three years. This proposal to pay for only a limited time seems to relate with particularity to repaying only the secured creditors in full, or, in the case of the mortgage, to the point at which payments are current. Second, the debtors are seeking to discharge a student loan which is not dischargeable in Chapter 7 as well as loans from employee credit unions. Third, the plan ignores future income increases that

Estus, a federal employee, is likely to receive." *In re Estus, supra*, at 317.

In the matters under consideration there are no malevolent motives in the selection of 16 month plans. However, there is no demonstrated desire for repayment of creditors in any of these plans either. There is the stated desire of achieving a fresh start in all three cases.

■ One of the Congressional purposes of Chapter 13, as expressed in *Flygare*, is the repayment of creditors. If a debtor simply desires relief from his or her debts, Chapter 7 provides an adequate remedy in most cases. The debtors would also achieve a fresh start sooner in a Chapter 7 liquidation, as attorney's fees are usually smaller and the financial affairs of the debtor are resolved much earlier.

■ In each of the cases now under consideration, the plan is careful to terminate immediately upon the final installment of attorney's fees. Only secured indebtedness and priority claims are paid to any real extent. There will remain at least as much excess in the budget after the expiration of 16 months as there is now.

The real purpose of the 16 month, minimum repayment plans here is to avail debtors of the opportunity to defer attorney's fees, since it appears difficult to obtain counsel in Chapter 7 without payment of fees in advance. While I understand the practical problems of securing counsel for Chapter 7 liquidations, I cannot modify the Congressional intent of Chapter 13, as expressed by the Tenth Circuit Court of Appeals, because of the local practice of attorneys regarding their fees. It does not appear to me that any of these plans promotes the purpose of repayment of creditors. I am mindful that the failure to promote the purpose of legislation may not necessarily be tantamount to an abuse of the spirit and purpose of that legislation. Yet, where, as here, the true purpose of the proposed plan is simply to provide creditors, over a period of time, what they could achieve under Chapter 7 now, while paying the expenses of administration over

a period of time, that seems to me to be an abuse (though not a "bad faith" subversion) of the spirit and purpose of Chapter 13, as promulgated by the Congress.

It is therefore ordered that confirmation of the three plans under consideration herein, as proposed, is denied. Each of the debtors is afforded an opportunity within fifteen (15) days to move to convert or to dismiss or to submit modified proposed Plans of arrangement for consideration by the Court and creditors.