**In re Gail Habegger VANCE, Debtor.**

**Bankruptcy No. 3–85–316.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 21, 1985.

---

James Lackner, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff/petitioner.

Maury Landsman, St. Paul, Minn., for defendant/respondent.

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came on for hearing before the court upon the objection of the Department of Health and Human Services (here-

---

inafter "HHS") to confirmation of the debtor's Chapter 13 plan. James Lackner, Assistant United States attorney, appeared on behalf of HHS. Maury Landsman, attorney, appeared on behalf of the debtor. Based upon the file, records, and testimony adduced at trial, the court enters the following order pursuant to the Rules of Bankruptcy Procedure.

The debtor is a physician who received money from HHS under two separate National Health Service Corps (hereinafter "NHSC") scholarship programs to attend medical school during the 1977–1978 and 1978–1979 school years. During the 1977–1978 school year, the debtor received a scholarship to cover her educational expenses under the "scholarship training program" in the amount of $9,499.00. At the time the debtor accepted the award under the scholarship training program, she executed a contract which specifically set forth her two-year service obligation as a commissioned officer in the Public Health Service Corps or as a civilian member of NHSC. The contract further provided that a participant who fails for any reason to complete an active duty service obligation is liable for the payment of the amounts received under the scholarship award plus interest at the maximum legal prevailing rate.

During the 1978–1979 school year, the debtor received a scholarship under the new NHSC scholarship program in the amount of $10,650.00. At the time the debtor accepted the scholarship under the NHSC scholarship program, she executed a contract which specifically set forth her two-year service obligation. In addition, the contract set forth strict default provisions which provided that a participant who fails to begin or complete their service obligation for any reason will be assessed a penalty of three times the scholarship amount plus interest at the prevailing rate.

The debtor entered into both scholarship programs and signed the contracts knowingly and voluntarily accepting the consequences. She knew that the purpose of the programs was to provide primary medical and health services to persons living in communities and areas in the United States where such services were inadequate and that they were not ordinary scholarship programs which would allow participants the option to pay the money advanced in lieu of fulfilling the service obligation. At the time the debtor entered into the scholarship programs, she was married and had no children. The debtor graduated from the Michigan State University College of Human Medicine in 1980.

Following graduation, the debtor entered into a pathology residency which was not an approved graduate training area under the NHSC scholarship programs and she was therefore placed in default of her contract. At the time the debtor entered into the pathology residency, and at all times relevant hereto, the debtor knew that a background of pathology was not an approved course of training under the NHSC scholarship programs which would enable her to complete her two-year service obligation.

The debtor subsequently entered into an approved pediatrics residency in approximately July, 1981 and was removed from default status. The debtor was therefore eligible for and received a deferment through June 30, 1983.

By letter dated May 13, 1982, the debtor informed the NHSC scholarship program deferment section that she had requested a year's leave of absence from her pediatrics training program as of July 1, 1982 due to pregnancy, and informed them of her decision to return to her unapproved pathology residency after the termination of her pregnancy rather than perform her service obligation. From September 1, 1982 through December 31, 1982, the debtor received a suspension of her obligation due to pregnancy.

In July, 1983, the debtor return to her unapproved pathology residency rather than begin her service obligation and was therefore placed in default of the conditions of her scholarship awards. The debtor is presently employed as a research pathologist in a residency program at the University of Minnesota and is currently receiving an income of approximately $21,-

500.00 per year. Upon completion of the pathology residency, the debtor will have the capability to earn an annual income of approximately $40,000.00—$50,000.00.

Since July, 1983 the debtor has been in breach of her service obligation under the NHSC scholarship program and refuses to perform her two-year service obligation unless she can be placed in a position in the Minneapolis/St. Paul metropolitan area or surrounding communities. At the present time, the Minneapolis/St. Paul metropolitan area and surrounding communities are not federally-designated "health manpower shortage areas" in need of medical personnel under the NHSC programs.

At the time of filing her petition, the debtor listed an unsecured debt to HHS in the amount of $77,000.00.[1] The debtor's plan proposes to pay $400.00 per month for 60 months until she has paid $24,000.00 or 31% of claims allowed, whichever is less. In addition, the debtor's plan lists an unsecured claim of $397.50 to her attorneys, and a student loan in the amount of $640.64 to Michigan State University. HHS has objected to the debtor's Chapter 13 plan as not meeting the good faith requirement of 11 U.S.C. § 1325(a)(3). The court agrees.

## MEMORANDUM

The debtor's Chapter 13 plan proposes to pay approximately 100% of the principal amount received under the two scholarship programs in 1977 and 1978. However, the majority of the debt sought to be discharged under the Chapter 13 plan is to HHS for penalties and interest incurred by the debtor. The debtor argues that she should be allowed the option to tender repayment of the principal amount received under the scholarship programs in lieu of fulfilling her service obligation or incurring the penalty and interests stated unambiguously on the face of the contract signed by the debtor due to changes which have taken place in her life since she entered the scholarship programs. The debtor enumerates the following changes: her decision to

pursue a career in pathology, her husband's obtaining employment in the Twin Cities area, the birth of her daughter, and her attempts to comply with fulfillment of her service obligation.

The scholarship training program codified at Title 42 U.S.C. § 234 in which the debtor participated during the 1977–1978 school year was repealed on October 1, 1977. In its place, Congress created a new scholarship program entitled the "NHSC scholarship program." The new scholarship program was enacted in order to more effectively implement the goals of Congress to provide medical manpower to shortage areas. Under Title 42 U.S.C. § 254o (b)(1), a penalty of three times the scholarship amount was automatically assessed against non-complying doctors in order to discourage participants from breaching their service obligations.

Under both scholarship programs, the intent of Congress is clear—that is to provide primary medical and health services to persons living in communities and areas of the United States where such services were inadequate due to economic and/or unattractive living conditions. In furtherance of this purpose, the NHSC has developed a policy under both scholarship programs which allows individuals who have been placed in default to fulfill their financial obligations (clearly stated in the contracts) through service by executing a forbearance agreement once the service obligation is completed. It is clear that Congress did not intend nor did it establish the NHSC for the sole purpose of providing loans to medical students.

Section 1325 of the Bankruptcy Code sets forth the requirements that must be met in order for the court to confirm a Chapter 13 plan. Section 1325(a)(3) provides that a Chapter 13 plan must be "proposed in good faith and not by any means forbidden by law." The Eighth Circuit's decision in *In re Estus*, 695 F.2d 311 (8th Cir., 1982) held that the proper inquiry in determining

---

1. HHS claims, as of the date of filing the Chapter 13 petition, $78,196.93 in principal, interest, and penalties for the two programs combined.

whether a debtor's plan meets the good faith requirement of § 1325 is "whether the plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13." This court finds and so holds that the purpose and spirit of a Chapter 13 plan cannot be used to thwart the will of Congress when Congress has clearly provided a triple penalty for the sole purpose of encouraging participants under the NHSC scholarship programs to perform their service obligations. The court finds, as a matter of law, that the debtor's plan has not been proposed in good faith.

The debtor has relied heavily on the fact that she has made numerous attempts since graduating from medical school to fulfill her service obligation as evidence of good faith in proposing her Chapter 13 plan. The debtor's beliefs are misplaced. In spite of the good faith attempts of the debtor to fulfill her service obligation, as evidenced by her willingness to comply with the conditions and terms under the contract, the good faith requirement of § 1325 requires the court to look at the purpose of the *plan*. It was only after the assessment of the triple penalty against the debtor that she sought relief by way of a Chapter 13 plan. Furthermore, the debtor has sought discharge of her debt at a time when her income can be expected to rise dramatically. It is clear to this court that the debtor's Chapter 13 plan reflects the debtor's overriding, if not sole, intent to discharge interest and penalties incurred as a result of her breach of the scholarship programs. The debtor's intent to comply with the service obligation is better suited to an administrative hearing before the HHS.[2]

At the time she accepted the benefits, the debtor knew that fulfillment of her service obligation required her to obtain training in an area of medicine which has been approved by the Secretary of Health, Education, and Welfare so as to enable her to provide primary medical care to people in need. In addition, the debtor knew that fulfillment of her service obligation might require her and her husband to relocate within the United States to a federally-designated manpower shortage area. The debtor must have also taken into consideration the possibility that she would begin a family prior to fulfilling all of her service obligation. Congress must also have considered the above possibilities when it enacted the provisions providing for a triple penalty to be assessed against participants in the scholarship program who fail to perform their service obligations. This court must pay deference to Congressional acts.

The evidence plainly shows that the debtor knew exactly what she was getting into when she entered the scholarship programs, including the triple penalty, and to allow the plaintiff relief by confirming her Chapter 13 plan is contrary to the purpose and spirit of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED that confirmation of the debtor's Chapter 13 plan be and the same is hereby denied.

---

**2.** The debtor has made much of the fact that she was summarily denied participation under the National Research Award Program which is available as an alternative to the service obligation for recipients of NHSC scholarships. There was no evidence presented to this court that the debtor ever appealed that administrative decision or exhausted her administrative remedies before HHS regarding fulfillment or alternative means of fulfilling her service obligation.