In the Matter of Percell KELLEY,
Veronica O. Kelley, Debtors.

Bankruptcy No. 85–36.

United States Bankruptcy Court,
D. Delaware.

March 25, 1986.

Eric M. Doroshow, Wilmington, Del., for debtors.

Thomas D. Runnels, Newark, Del., Trustee.

Joseph S. Yucht, Wilmington, Del., for Walter R. Tomczyk and Agnes T. Tomczyk.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Percell and Veronica Kelley filed a Chapter 13 case on January 31, 1985. They have proposed two plans. Each plan was objected to and rejected by Walter and Agnes Tomczyk who also filed a motion to dismiss the case. The objection to the last proposed plan and the motion to dismiss were joined for hearing.

The Kelleys are school teachers who became indebted to the Tomczyks when they entered into an agreement to buy all of the capital stock of Dutch Inn, Inc. for $225,000 on January 30, 1984. The Dutch Inn, Inc. operated a retail package liquor store, a deli and a banquet/restaurant facility in property it owned at 3125 New Castle Avenue, New Castle, Delaware.

At the time of the stock purchase, the Kelleys were the owners of 104–106 Main Street, Smyrna, Delaware, which they had bought in 1983 from Lawrence Gray for $59,950. This property was subject to two mortgages: one to Lawrence and Augusta Gray dated July 13, 1983, in the amount of $51,950 and the other to Nationwide Mortgage Company dated July 13, 1983 in the amount of $30,000.

The stock purchase agreement provided for the payment of the $225,000 purchase price as follows: cash of $2,000 upon execution of the agreement and $48,000 at settlement; the balance of $175,000 to be secured by and payable under the terms of a first mortgage and bond on real property of the Dutch Inn in the amount of $80,000 and a third mortgage and bond in the amount of $95,000. As further security the Kelleys gave the Tomczyks:

1. a mortgage and bond in the amount of $85,000 against the Smyrna property;
2. undated resignations as officers and directors of the Dutch Inn;
3. an undated assignment of stock; and
4. the corporation's financing statement covering all items of equipment, inventory, furniture, furnishings and fixtures.

The mortgage was recorded as a third lien on the Smyrna property. The resignations and assignment were to be held in escrow for use in the event of default. When the Kelleys defaulted in the fall of 1984, the Tomczyks resumed ownership of the stock and took control of the business operations. See ¶'s 15 and 20, Sales Agreement.

Both the Tomczyks and the Dutch Inn, Inc. filed proofs of claim. The Tomczyks' claim is for $90,950, representing principal and interest due them on the stock sale, secured by their third mortgage against the Kelleys' principal residence in Smyrna. The corporation's claim of $12,119 represents the value of property covered by the financing statement which was sold by the Kelleys and the cost of repairing the premises following removal of that property. No objections having been filed to either claim, they are deemed allowed. 11 U.S.C. § 502(a). As holders of alleged claims they are parties in interest and have standing to object to confirmation and to move for dismissal under 11 U.S.C. §§ 1324 and 1307(c).

The Tomczyks contend that not only does the Kelleys' two proposed plans not satisfy the good faith requirement of § 1325(a)(3) of the Code but that a lack of good faith permeates the case. They claim the Kelleys concealed or misrepresented their assets and liabilities, sold estate assets and did not account for the proceeds of sale; failed to timely file a plan and to make timely payments under § 1326; improperly classified claims and sought to modify the rights of holders of secured claims on debtors' principal residence. Therefore, confirmation should be denied and the case dismissed.

While the Code does not define "good faith", the appropriate standard to be applied to the good faith requirement of § 1325(a)(3) has been extensively litigated. Most courts have rejected actual fraud adhering to the traditional understanding of good faith as meaning honesty of intention. Consistent probative factors have

been whether the debtor has misrepresented facts; are any inaccuracies an attempt to mislead the court; has the debtor unfairly manipulated the bankruptcy code. The court must look to the schedules, proposed plans, documentary evidence and testimony given at two hearings to evaluate the "good faith" of Percell and Veronica Kelley. There is considerable conflict in the evidence.

On February 20, 1985, the Kelleys signed a schedule of assets in which they valued their household goods at $450. Three days later, Percell Kelley as owner signed an agreement with Tag Sales, Inc. to conduct a sale of household goods from the Kelley residence on April 2, 3, and 4. The sale grossed $5,507.40. Tag Sales retained $1,005.60 and turned over to Percell Kelley $500 cash and a check dated April 6 for $4,001.80. Mr. Kelley stated that the items sold belonged to Patricia McBride, a longtime friend who had stored her possessions with the Kelleys because of marital difficulties. He stated further that the proceeds of sale were turned over to Mrs. McBride and that in turn she gave him $400 to pay an electric bill; $245 for bankruptcy court costs and took Mrs. Kelley shopping and bought gifts for her.

Lawrence Gray, previous owner of the Kelley residence and a creditor, testified that the Kelleys in 1983 had purchased a pine cupboard cabinet, a mahogany pedestal table, Roman soldier statue and a 7-light Victorian chandelier of the approximate value of $2,000 and possibly other items on the tag sale inventory from his wife, an antique dealer.

The Kelleys did not list an automobile on their schedule of assets. Yet when questioned by the Standing Trustee about a certificate from the Division of Motor Vehicles he acknowledged that it reflected his ownership of a 1973 Mercedes without encumbrances. He testified that the automobile had been purchased by his father-in-law, Welton O'Neal; that it was titled in the name of Mr. O'Neal and Veronica Kelley; and there was a lien against it.

In connection with his operation of the Dutch Inn, Percell Kelley entered into an agreement on October 27, 1984, for the sale of assets of a portion of the business and a lease for a portion of the property. Under the terms of the agreement and lease, Raymond Moyer paid him $2,000 and two rental payments. Mr. Kelley received another $1,000 rental and a cancellation of a debt. None of this was reflected on the debtors' statement of affairs.

From the foregoing the court concludes that the Kelleys have not acted in good faith with respect to representations made to the court. Specifically, they have misrepresented the value of their assets. Despite Mr. Kelley's denials, the evidence strongly supports the conclusion that the Kelleys owned the household goods sold by Tag Sales, Inc. and the 1973 Mercedes. Mr. Kelley conducted negotiations for the sale of household goods, signed the contract as owners, and received the proceeds. They had purchased at least four of the items on the sale inventory in 1983. Although he became aware of the Trustee's possession of a certificate of the Delaware Division of Motor Vehicles listing him as owner of the 1973 Mercedes with no liens of record he did not present any documentary evidence to the contrary. Mrs. McBride, who was present during part of the hearing, did not testify. Additionally, the Kelleys received money in connection with their operation of the Dutch Inn which was not reflected in their Chapter 13 statement and schedules.

Another troubling aspect of this case going to the good faith issue relates to the Kelleys' effort to pay creditors. Their first plan provided for the retention of their residence with direct monthly payments to the first and second mortgagees. These payments totaling $1,298 were budgeted as monthly expenses along with other expenses that would not be paid through the Trustee. Subtracting their expenses from income, the Kelleys were left with a monthly surplus of $225 to pay creditors under the plan. The amended plan proposed conveying their residence to the Tomczyks and granting the first and second mortgagees

relief from stay. This would permit the Tomczyks to sell or the first and second lienholders to foreclose. The result of a sale would be that the mortgagees would be paid in order of lien priority. If there were insufficient proceeds to pay all liens, the mortgagees would become unsecured creditors for the amount of any deficiency. The net result for the Kelleys is a reduction of $1,298 in their monthly expenses, thus increasing the amount of their surplus income to $1,523 while still proposing to pay the Trustee the sum of $225 a month.

Misrepresentation of their assets and of the amount of income available after expenses for distribution to creditors makes any attempt to determine whether the proposed plan meets the requirements of § 1325(a)(4) and (b)(1) meaningless. Moreover, the Kelleys failed to make timely payments to the Trustee as required by 11 U.S.C. § 1326(a)(1). The amended plan is not a good faith effort to pay creditors; therefore, confirmation must be denied.

The facts supporting denial of confirmation for lack of good faith also lead to the granting of the Tomczyks' motion to dismiss for cause. 11 U.S.C. § 1307(c)(4) and (5).