In re Johnny L. EASLEY, Debtor.

Marc NELSON, Movant,

v.

Johnny L. EASLEY, Respondent.

Bankruptcy No. 385–01795.

United States Bankruptcy Court,
M.D. Tennessee.

May 1, 1987.

Jack E. Seaman, Lyell & Jackson, Nashville, Tenn., for debtor.

D. Reed Houk, Stokes & Bartholomew, Nashville, Tenn., for Marc Nelson.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The holder of an unsecured claim declared nondischargeable in debtor's preconversion Chapter 7 case objects to confirmation of this composition Chapter 13 plan on grounds that the debtor has failed to commit all projected disposable income as required by 11 U.S.C. § 1325(b) and the plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3). The debtor has committed all projected disposable income and the plan is proposed in good faith. Confirmation will be denied because of an unfairly discriminatory classification of claims.

The following constitute findings of fact and conclusions of law. Bankr. R. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(L) (Supp. II 1984).

## I.

Debtor was arrested in 1984 and while in custody, attacked and injured a guard, Marc Nelson ("Nelson"). Debtor was prosecuted criminally for aggrevated assault. Nelson sued debtor for damages in state court. Trial was stayed by debtor's Chapter 7 petition.

On September 30, 1985, this court granted Nelson relief from the stay to liquidate the assault claim. The state court awarded Nelson compensatory and punitive damages totalling $19,000. Nelson then filed an adversary proceeding in the bankruptcy case to determine the dischargeability of the state court judgment. On March 31, 1986, this court ruled that the $19,000 claim was nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Debtor then converted the Chapter 7 case to Chapter 13.

Debtor's Chapter 13 plan proposes to pay $30 per week for 36 months. One unsecured claim holder with a cosigned debt is separately classified for full payment. Nelson would be paid approximately 12%.

## II. PROJECTED DISPOSABLE INCOME

■ Upon objection by the holder of an allowed unsecured claim, the Bankruptcy Code forbids confirmation of a Chapter 13 plan unless (1) the objecting claim holder will be paid in full, or (2) the debtor commits all "projected disposable income" to funding the plan for 36 months. 11 U.S.C. § 1325(b)(1) (1982 ed. & Supp. III 1986).[1]

The Code restates "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended—(A) for the maintenance or support of the debtor or a dependant of the debtor." 11 U.S.C. § 1325(b)(2) (1982 ed. & Supp. III 1986).

There has been much discussion of what constitutes "reasonably necessary" expenses for § 1325(b) purposes. *See, e.g., In re Rogers,* 65 B.R. 1018 (Bankr. E.D. Mich. 1986); *In re Kitson,* 65 B.R. 615 (Bankr. E.D.N.C. 1986); *In re Foster,* 61 B.R. 492 (Bankr. N.D.Ind. 1986); *In re Greer,* 60 B.R. 547, 14 BANKR. CT. DEC. (CRR) 588 (Bankr. C.D.Cal. 1986); *In re Red,* 60 B.R. 113, 14 COLLIER BANKR. CAS.2d (MB) 696 (Bankr. E.D.Tenn.1986); *In re Tinneberg,* 59 B.R. 634 (Bankr. E.D. N.Y. 1986); *In re Jones,* 55 B.R. 462 (Bankr. D.Minn.1985); *In re Festner,* 54 B.R. 532 (Bankr. E.D.N.C.1985); *In re Sturgeon,* 51 B.R. 82 (Bankr. S.D. Ind. 1985); *In re Otero,* 48 B.R. 704 (Bankr. E.D.Va.1985). No bright line definitions have emerged. These are fact questions which must be determined in the context of individual debtors and their dependents. There is the notion that "reasonable" means "adequate" but not "first-class." *See In re Kitson,* 65 B.R. 615 (Bankr. E.D.N.C.1986).

Debtor's amended budget commits $30 to the plan from a weekly take-home pay of $262.30. Debtor's monthly mortgage payment is $321 and utilities are budgeted at $154. These amounts are reasonable for middle Tennessee. Food of $200 per month is reasonable. Monthly clothing expense of $20 and laundry expense of $10 are consistent with the debtor's simple lifestyle. Doctor expenses of $50 per month were justified for dental work, psychiatric attention and prescriptions. Debtor takes medicine twice daily to control violent outbursts and a psychiatrist monitors the medication. Transportation, including vehicle repair and gasoline is reasonably estimated at $125 per month. Automobile insurance is $41 per month. Barber shop expense of $18 and house maintenance of $60 a month were marginally justified by the debtor but are not unreasonable in an amended budget which reflects no allocation for recreation, newspapers, church contributions or club dues.[2] Debtor testified he would commit part of future tax refunds to the plan and use the balance to purchase a stove, refrigerator, and bedroom furniture. The plan does not commit future pay increases, but there was no evidence that raises are likely. *See In re Krull,* 54 B.R. 375 (Bankr. D.Colo.1985) (future salary increases too speculative to be "projected"). Debtor testified he incurred additional expense for furnace replacement after the amended budget. He is also now divorced and the

---

**1.** 11 U.S.C. § 1325(b)(1), added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, reads in full:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1) (1982 ed. & Supp. III 1986).

**2.** The debtor's original budget reflected slightly higher income and several expense items of questionable reasonableness—for example, Mason dues of $30 per month and veterinarian expenses of $10 per month. These items were eliminated by the amended budget and income was slightly reduced by lost overtime.

divorce settlement requires him to pay $10 a week.

The expenses in debtor's budget are reasonably necessary for maintenance and support. Debtor satisfies the disposable income test of 11 U.S.C. § 1325(b) (1982 ed. & Supp. III 1986).

## III. GOOD FAITH

█ A Chapter 13 plan must be proposed in good faith. 11 U.S.C. § 1325(a)(3) (1982 ed. & Supp. III 1986). The Bankruptcy Code does not define "good faith." There is no illuminating legislative history. More than 300 reported "good faith" decisions form a maze of rules and exceptions swallowing rules. Nearly identical fact patterns have produced inconsistent results within judicial districts and across the circuits. The reported decisions demonstrate that "good faith" is an illusive statutory description of the limits of Chapter 13 relief.

A significant number of circuit courts have reduced "good faith" to lists of factors. *See Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986); *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983); *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens),* 702 F.2d 885, 888 (11th Cir.1983); *United States v. Estus (In re Estus),* 695 F.2d 311, 317 (8th Cir. 1982); *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982); *Goeb v. Heid,* 675 F.2d 1386 (9th Cir.1982); *Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426, 432 (7th Cir.1982). Other courts have adopted generic tests of good faith: examination of the "totality of the circumstances," or "honesty of intention." *See Public Finance Corp. v. Freeman,* 712 F.2d 219 (5th Cir.1983); *Barnes v. Whelan,* 689 F.2d 193 (D.C. Cir.1982).

The sixth circuit has not prescribed a list of good faith attributes. At least 16 factors have been considered by other circuits. Many of the stated components of "good faith" are duplicative of specific standards for confirmation applied elsewhere in the Bankruptcy Code. Some factors adopted in early decisions are affected by subsequent amendments to the Bankruptcy Code.

### A. FREQUENCY OF FILING BANKRUPTCY

Multiple and successive bankruptcy filings by the same debtor are a problem in some judicial districts. *See, e.g., In re Kinney,* 51 B.R. 840 (Bankr. C.D.Cal.1985) (10 filings including multiple Chapter 13 cases by related family members); *Snow v. Jones (In re Jones),* 41 B.R. 263 (Bankr. C.D.Cal. 1984) (six petitions, including four Chapter 13's in an effort to defeat a foreclosure). The frequency of filing is cited as a factor bearing on a Chapter 13 debtor's good faith. *See, e.g., Johnson v. Vanguard Holding Corp.,* 708 F.2d 865 (2d Cir.1983); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982); *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983); *United States v. Estus (In re Estus),* 695 F.2d 311 (8th Cir.1982).

The 1984 amendments to 11 U.S.C. § 109(g) (as renumbered in 1986) reduce the importance of a debtor's filing history as a feature of good faith. Section 109(g) prohibits an individual debtor from refiling bankruptcy within 180 days of the dismissal of a bankruptcy case under certain circumstance.[3] Congress has thus precluded refiling of bankruptcy where it perceived abuse. If a debtor is not disabled to refile by § 109(g), it is not obvious that a permitted refiling should be indicative of "bad faith" for Chapter 13 purposes.

According to the statement of affairs, this debtor's first Chapter 7 case was converted to this Chapter 13 case. No abuse is apparent.

---

**3.** 11 U.S.C. § 109(g) reads in full:
Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
  (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
  (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.
11 U.S.C. § 109(g) (1982 ed. & Supp. III 1986).

## B. ACCURACY OF PETITION, STATEMENTS AND SCHEDULES

Where the debtor misrepresents income, expenses, assets or other matters in the petition, statements or schedules, "good faith" is wanting and confirmation has been denied. *See, e.g., In re Kelley*, 58 B.R. 927 (Bankr. D.Del.1986) (debtors misrepresented value of assets and understated income); *In re DeReus*, 53 B.R. 362 (Bankr. S.D.Cal.1985) (evasive, conflicting and inaccurate information); *In re Cash*, 51 B.R. 927 (Bankr. N.D.Ala.1985) (omission of debts); *In re Sullivan*, 40 B.R. 914 (Bankr. E.D.N.Y.1984) (debtor refused to supply financial information about overseas investment business); *In re Smith*, 39 B.R. 57 (Bankr. S.D.Fla.1984) (failure to list creditors); *In re Delany*, 28 B.R. 956 (Bankr. D.Conn.1983) (debtor inadequately disclosed financial contributions to family members and misstated the existence of dependents).

This debtor's statements and schedules are reasonably accurate. It was necessary to amend the Chapter 13 budget, but the amendments were explained by changes in income and expenses including the loss of overtime.

## C. MOTIVATION IN FILING CHAPTER 13

## D. INITIAL FILING OF CHAPTER 7 RATHER THAN CHAPTER 13

### E. EXISTENCE OF DEBT NONDISCHARGEABLE IN A CHAPTER 7 CASE

### F. CIRCUMSTANCES OF INCURRING DEBT

### G. NATURE AND AMOUNT OF UNSECURED DEBT

Several courts have considered prepetition and preplan conduct for evidence of the debtor's motive and intent. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 14 BANKR. CT. DEC. (CRR) 541 (9th Cir.1986) (Chapter 13 filed solely to defeat state court specific performance litigation); *In re Wall*, 52 B.R. 613, 13 BANKR. CT. DEC. (CRR) 625 (Bankr. M.D.Fla.1985) (bad faith to use Chapter 13 to avoid prepetition fraud); *In re Myers*, 52 B.R. 248, 13 BANKR. CT. DEC. (CRR) 626 (Bankr.M.D.Fla.1985) (bad faith where debtor filed Chapter 13 immediately after borrowing $2,200); *In re San Miguel*, 40 B.R. 481, 12 BANKR. CT. DEC (CRR) 194 (Bankr. D.Colo.1984) (bad faith where real purpose of proposed plan is to defer attorney's fees, not repay creditors); *In re Stein*, 36 B.R. 521 (Bankr. M.D.Fla. 1983) (bad faith where sole purpose of plan is to deal with a mortgage holder); *In re Gates*, 42 B.R. 4 (Bankr. N.D.Ga.1983) (sole purpose of third Chapter 13 case was to thwart a foreclosure sale).

Debtors often "use" Chapter 13 to manage the effects of prepetition misconduct. The Bankruptcy Code invites eligible individuals to do just that—Chapter 13 allows the discharge of many debts that would be nondischargeable in Chapter 7. *Compare* 11 U.S.C. § 1328 (1982 ed. & Supp. III 1986) *with* §§ 727 and 523. The *quid pro quo* for this enhanced discharge includes payment of all disposable income for at least 36 months and compliance with the other requirements of 11 U.S.C. § 1325. That a substantial portion of the debt scheduled by a Chapter 13 debtor resulted from suspect prepetition conduct may be indicative of careful legal advice—debtors are counseled to file Chapter 13 to deal with potentially nondischargeable claims.

If Congress intended to render debtors ineligible for Chapter 13 relief or ineligible to confirm a plan where claims are or might be nondischargeable in a Chapter 7 case, then that statement would appear in the conversion sections of Chapter 7 and/or in the confirmation or discharge provisions of Chapter 13. Just the opposite is true. Section 1328(a) grants Chapter 13 debtors a broader discharge. A Chapter 7 debtor has an absolute right to convert to Chapter 13 if the debtor is eligible for Chapter 13 relief and has not previously converted from another chapter. 11 U.S.C. § 706(a) (1982 ed. & Supp. III 1986). This right cannot be waived. This right can be exercised after a judgment of nondischargeability in the Chapter 7 case.

Some decisions conclude that conversion to Chapter 13 after losing a discharge or dischargeability battle in Chapter 7 is relevant to good faith but not conclusive of bad faith. *See Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 431–32 (7th Cir. 1982) (good faith cannot be defined as "the absence of any conduct that would traditionally have barred discharge, without rendering Chapter 13's discharge provisions nugatory."); *Street v. Lawson (In re Street)*, 55 B.R. 763, 765 (Bankr. 9th Cir. 1985) ("A conversion from Chapter 7 to Chapter 13 following an adverse decision on a dischargeability action is not a 'manipulation of the Bankruptcy Code.'"); *In re Caldwell*, 67 B.R. 296, 303 (Bankr.E.D. Tenn.1986) (plan was not proposed in bad faith simply because it proposes to deal with nondischargeable debts from preconversion Chapter 7); *In re Parameswaran*, 64 B.R. 341 (Bankr.S.D.N.Y.1986) (conversion from Chapter 7 to Chapter 13 permitted notwithstanding successful objection to discharge in Chapter 7 case); *In re McMonagle*, 30 B.R. 899, 10 BANKR. CT. DEC. (CRR) 1086 (Bankr.D.S.D.1983) (confirms plan comprising debt declared nondischargeable in Chapter 7 case converted to Chapter 13); *In re Martini*, 28 B.R. 932 (Bankr. S.D.N.Y.1983) (not bad faith to pay less than 100% of loan declared nondischargeable in prior liquidation case); .

Many courts have confirmed Chapter 13 plans over good faith objections notwithstanding composition of claims that would be nondischargeable in a Chapter 7 case. *See, e.g., Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986) (compromise of obligation that would be nondischargeable in Chapter 7 is not alone bad faith); *Wisconsin Higher Education Corp. v. Bear*, 789 F.2d 577, 14 COLLIER BANKR. CAS.2d (MB) 1054 (7th Cir.1986) (student loans); *In re Kazzaz*, 62 B.R. 308 (Bankr. E.D. Va.1986) (larceny claim); *In re Whitehead*, 61 B.R. 397, 399 (Bankr.D.Or.1986) (conversion); *In re Rushton*, 58 B.R. 36 (Bankr.M.D.Ala.1986) (student loans); *In re Krull*, 54 B.R. 375 (Bankr.D.Colo.1985) ("wrongful conduct"); *In re Peterson*, 53 B.R. 339 (Bankr.D.Or. 1985) (student loan); *In re McBroom*, 51 B.R. 953 (Bankr.W.D.Va.1985) (fraud); *In re Dos Passos*, 45 B.R. 240, 12 BANKR. CT. DEC. (CRR) 809 (Bankr.D.Mass.1984) (student loans); *In re McAloon*, 44 B.R. 831, 12 BANKR. CT. DEC. (CRR) 578 (Bankr.E.D.Va.1984) (student loans); *In re Edwards*, 51 B.R. 792 (Bankr.D.N.M.1984) (embezzlement); *In re Vensel*, 39 B.R. 866 (Bankr.E.D.Va.1984) (student loans); *In re Eppers*, 38 B.R. 301, 10 COLLIER BANKR. CAS.2d 812 (Bankr.D.N.M.1984) (misrepresentation, conversion); *In re Ramus*, 37 B.R. 723 (Bankr.N.D.Ga.1984) (tort liability); *In re Ali*, 33 B.R. 890, 11 BANKR.CT.DEC. (CRR) 57 (Bankr.D.Kan. 1983) (student loan); *In re Jones*, 31 B.R. 485 (Bankr.N.D.Ill.1983) (public assistance overpayments); .

Other courts have refused confirmation of plans proposing to compromise nondischargeable claims. *See, e.g., In re Hale*, 65 B.R. 893 (Bankr.S.D.Ga.1986) (student loan); *In re Todd*, 65 B.R. 249 (Bankr.N.D. Ill.1986) (civil rights judgment); *In re Doersam*, 60 B.R. 130 (Bankr.S.D.Ohio 1986) (student loans); *In re Geehan*, 59 B.R. 600 (Bankr.S.D.Ohio 1986) (student loans); *In re Brown*, 56 B.R. 293 (Bankr.N. D.Ill.1985) (fraud); *In re Myers*, 52 B.R. 248, 13 BANKR. CT. DEC. (CRR) 626 (Bankr.M.D.Fla.1985) (fraud); *In re Wall*, 52 B.R. 613, 13 BANKR. CT. DEC. (CRR) (Bankr.M.D.Fla.1985) (fraud); *In re Sanabria*, 52 B.R. 75 (N.D.Ill.1985) (student loans); *In re Vance*, 49 B.R. 973, 12 COLLIER BANKR. CAS.2d (MB) 1392 (Bankr. D.Minn.1985) (student loans); *In re Brock*, 47 B.R. 167 (Bankr.S.D.Cal.1985) (embezzlement); *In re Nkanang*, 44 B.R. 955 (Bankr.N.D.Ga.1984) (student loans); *In re Williams*, 42 B.R. 474, 12 BANKR. CT. DEC. (CRR) 435 (Bankr.E.D.Ark.1984) (student loans); *In re Chase*, 43 B.R. 739, 12 BANKR. CT. DEC. (CRR) 217 (D.Md.1984) (criminal conduct); *In re Beauty*, 42 B.R. 655 (E.D.La.1984) (nondischargeable debts surviving prior discharge); *In re Dalby*, 38 B.R. 107 (Bankr.D.Utah 1984) (student loans); *In re Johnson*, 36 B.R. 67 (Bankr.S. D.Ill.1984) (student loans); *In re Boyd*, 57 B.R. 410 (Bankr.N.D.Ill.1983) (fraud); *In re Hawkins*, 33 B.R. 908 (Bankr.S.D.N.Y. 1983) (student loans); *In re Canda*, 33 B.R. 75, 10 BANKR. CT. DEC. (CRR) 1361 (Bankr.D.Or.1983) (student loans); *In re*

*Sotter*, 28 B.R. 201, 10 BANKR. CT. DEC. (CRR) 369 (Bankr.S.D.N.Y.1983) (criminal conduct); *Margraf v. Oliver (In re Oliver)*, 28 B.R. 420 (Bankr.S.D.Ohio 1983) (fraud).

There is no obvious pattern to when the presence of a nondischargeable claim results in a plan failing of good faith.[4] It is this court's view that the dischargeability of claims is specifically resolved by other sections of the Code and is not also a component of § 1325(a)(3). However, it is the law of this circuit that a debtor's preplan misconduct may affect the good faith calculus.

In *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982), the debtor "puffed" her income on an auto loan application two months before filing Chapter 13. The proposed plan seemed to pay 100% of the claim secured by the car but because the claim was split into secured and unsecured portions, the creditor would lose its contract interest under the plan on part of its claim. The sixth circuit expressed concern that "the liberal provisions of the new Chapter 13 are subject to abuse," and interpreted "good faith" to require consideration of a debtor's preplan [5] conduct:

> We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong ... runs the risk of turning otherwise honest consumers and shopkeepers into knaves.

*Id.* at 432. Where the debtor's preplan conduct in incurring the debt is "dishonest" the court states "the plan simply should not be confirmed." *Id.* Where the preplan conduct is "questionable" but not dishonest, the circuit would require "full payment in accordance with the contract." *Id.*

Application of *Memphis Bank* to these facts is uncertain. This debtor did not obtain money, services or products from a seller by "dishonesty." This debtor did not engage in "questionable" conduct to obtain economic advantage. The debtor "contracted" his debt to Nelson as a result of a violent outburst. Debtor did not know the victim personally. Nelson will be paid less than his full judgment through the proposed plan but, given the debtor's small income, it is problematic what amounts Nelson could collect from the debtor over what period absent bankruptcy. If the debtor's preplan conduct fits into *Memphis Bank*, it must be in the "questionable" category.

The sixth circuit decided *Memphis Bank* in 1982. In 1984, Congress amended the confirmation standards of § 1325 to include new § 1325(b). As discussed above and below, new § 1325(b) demonstrates congressional intent that an objecting unsecured claim holder can be satisfied in a Chapter 13 case by full payment *or* by commitment of all projected disposable income for a minimum of 36 months.

The percentage repayment discussion of good faith in *Memphis Bank* is eroded by the later enactment of § 1325(b). To require 100% payment of claims that arise from "questionable" preplan conduct as an element of "good faith" would render the general provisions of § 1325(a)(3) more

---

4. Especially confusing are the student loan cases collected above. In the 1978 Code, Congress focused on government guaranteed loans and determined that certain educational loans would be nondischargeable in Chapter 7 cases. *See* 11 U.S.C. § 523(a)(8) (1982 ed. & Supp. III 1986). Congress determined not to bar the dischargeability of educational loans in a Chapter 13 case. *See* 11 U.S.C. § 1328(a) (1982 ed. & Supp. III 1986). Congress has enacted other statutes protecting special kinds of student loans from discharge in all bankruptcy cases. *See In re Johnson*, 787 F.2d 1179, 14 BANKR. CT. DEC. (CRR) 550 (7th Cir.1986) (Health Education Assistance Loans not subject to discharge pursuant to 42 U.S.C. § 294f(g)). Given repeated congressional attention to this subject and the failure of Congress to include a provision barring the dischargeability of all student loans (other than HEAL loans) in Chapter 13 cases, it is difficult to argue that the presence of a student loan is an element of good faith under § 1325(a)(3).

5. "Preplan" is the word used by the sixth circuit in *Memphis Bank*. The conduct at issue in *Memphis Bank* was "prepetition." The conduct complained of herein is both prepetition—the assault—and preplan—conversion to Chapter 13 after a judgment of nondischargeability in the Chapter 7 case. Both are theoretically within the ambit of *Memphis Bank*.

stringent than the specific economic test contained in new § 1325(b). *Memphis Bank* can be accommodated with new § 1325(b) by holding that questionable pre-plan conduct is a consideration in good faith analysis, but does not mandate a specific percentage of repayment.

This debtor did not have a substantial debt problem until his assault of Nelson. That prepetition conduct was reprehensible. The debtor was appropriately prosecuted by the State. Congress permits the civil damages to be dealt with in a Chapter 13 case. The debt that resulted cannot be paid in full by this debtor within the limits of a Chapter 13 case. The debtor is eligible for Chapter 13 relief but can confirm a plan only if a composition is permitted. As demonstrated below, this plan meets the economic tests for confirmation.

## H. PROBABLE DURATION OF PLAN

### I. DEGREE OF EFFORT

### J. LIKELIHOOD OF FUTURE INCREASES IN INCOME

### K. PERCENTAGE OF REPAYMENT OF DEBT

### L. AMOUNT OF PROPOSED PAYMENTS

### M. AMOUNT OF SURPLUS IN BUDGET

Prior to the 1984 enactment of § 1325(b), the courts struggled to define the measure of effort required of a debtor as a component of good faith. Some courts demanded a debtor's "best efforts" as described in 11 U.S.C. § 727(a)(9). *In re Burrell,* 2 B.R. 650 (Bankr.N.D.Cal.1980); *In re Raburn,* 4 B.R. 624 (Bankr.M.D.Ga.1980). That view was rejected in this district. *In re Raines,* 33 B.R. 379, 381 (M.D.Tenn.1983) ("if 'good faith' was synonymous with 'best efforts'

then Congress would have had no need to include both of these terms in § 727(a)(9)"). Other courts concluded that a Chapter 13 plan must minimally satisfy the "best interests of creditors" test under 11 U.S.C. § 1325(a)(4). *In re Harland, II,* 3 B.R. 597 (Bankr.D.Neb.1980); *In re Cloutier,* 3 B.R. 584 (Bankr.D.Colo.1980); *In re Sadler,* 3 B.R. 536 (E.D.Ark.1980). Courts have also observed that the upper limits of a debtor's effort is defined by the "feasibility" requirement of 11 U.S.C. § 1325(a)(6). *In re Goodavage,* 41 B.R. 742 (Bankr.E.D.Va. 1984); *In re Perskin,* 9 B.R. 626 (Bankr.N. D.Tex.1981); *In re Howard,* 3 B.R. 75 (Bankr.S.D.Cal.1980).

Sections 1325(a)(4), (6) and (b) and 1322(c) fully circumscribe the "effort" that a debtor can or must make in a Chapter 13 case. The "best interests of creditors" test of § 1325(a)(4) requires that unsecured claim holders receive at least what they would be paid in a Chapter 7 liquidation. This debtor's Chapter 13 plan proposes to pay substantially more than unsecured claim holders would receive in a Chapter 7 case.[6]

The feasibility test of § 1325(a)(6) requires that the debtor be able to make all payments proposed by the plan. This is the maximum a debtor may endeavor to pay. This debtor has been employed by the Water and Sewer Department of Nashville for several years and his continued employment is likely. Debtor has a 12th grade education, is 26 years old and appears to be in good physical health. The proposed payment of $30 per week is allowed by § 1325(a)(6).

The "disposable income" test of § 1325(b) requires a Chapter 13 debtor to exhaust available income in payments through the plan for a period of 36 months. Section 1322(c) prohibits a debtor to pro-

---

**6.** The courts have overwhelmingly rejected the argument that 11 U.S.C. § 1325(a)(4) requires special treatment of the holder of a claim that would be nondischargeable in a Chapter 7 case. *In re Hawkins,* 33 B.R. 908 (Bankr.S.D.N.Y. 1983) (plan payment need only exceed the liquidation value of the debtor's property; the test involves no comparison of plan payments and the amount the creditor might receive upon collection of a nondischargeable debt in a Chapter 7 case). *Accord Phoenix Institute of Technol-* *ogy v. Klein,* 57 B.R. 818 (Bankr. 9th Cir.1985); *In re Kazzaz,* 62 B.R. 308 (Bankr.E.D.Va.1986); *In re Akin,* 54 B.R. 700 (Bankr.D.Neb.1985); *In re McMonagle,* 30 B.R. 899, 10 BANKR. CT. DEC. (CRR) 1086 (Bankr.D.S.D.1983); *In re Severs,* 28 B.R. 61 (Bankr.S.D.Ohio 1982); *Security Ins. Co. v. Vratanina,* 22 B.R. 453, 9 BANKR. CT. DEC. (CRR) 614 (Bankr.N.D.Ill.1982); *In re Graves,* 19 B.R. 402, 9 BANKR. CT. DEC. (CRR) 30 (Bankr.W.D.La.1982).

vide for payments longer than three years without demonstrating cause. This debtor proposes payment of all disposable income for 36 months consistent with §§ 1325(b) and 1322(c).

This debtor thus satisfies the economic tests for confirmation of a Chapter 13 plan. An independent economic test is not required as a component of "good faith." As Judge Bare explained in *In re Red,* 60 B.R. 113, 14 COLLIER BANKR. CAS.2d (MB) 696 (Bankr.E.D.Tenn.1986), the percentage of repayment is not appropriately considered as an element of good faith where the plan meets the statutory mandate of § 1325(b). *See also Holiday v. Tennessee Student Assistance Corp. (In re Holiday),* No. 386–0499 (M.D.Tenn. October 1, 1986).

### N.  SPECIAL CIRCUMSTANCES

Occasionally, courts have found evidence of "good faith" in special circumstances such as extraordinary medical expenses. This debtor has not been the victim of extraordinary "outside" forces. The debtor is now in treatment for the condition that may have contributed to the debtor's need for Chapter 13 relief.

### O.  BURDEN OF ADMINISTRATION

It is not obvious how a Chapter 13 plan could burden the Chapter 13 trustee in a manner indicative of a lack of "good faith." It has been said that good faith does not require that a Chapter 13 plan support its weight in administrative costs. *In re Snow,* 33 B.R. 113 (N.D.Ill.1983); *In re Harland, II,* 3 B.R. 597 (Bankr.D.Neb. 1980).

This proposed Chapter 13 plan presents no unusual administrative problems.

### P.  AMOUNT OF ATTORNEY'S FEES

A Chapter 13 plan which only pays the debtor's attorney's fees is suspect of good faith. *See In re San Miguel,* 40 B.R. 481, 12 BANKR. CT. DEC. (CRR) 194 (Bankr.D. Colo.1984). This is not such a case. The plan proposes to pay $468 to debtor's counsel. This is not a significant portion of total debt and is reasonable.

### Q.  GENERIC TESTS

The generic tests—"fundamental fairness," "totality of the circumstances," and "honesty of intention"—describe overall impressions of a debtor.

This debtor passes the "smell" test. The totality of this debtor's circumstances leaves the debtor no alternative but a composition Chapter 13 plan. The debtor presented evidence that this Chapter 13 plan is part of an honest effort to get control of the personal problems that led to this debt problem. The debtor intends to pay as much as a reasonable budget permits over the statutory period fixed by Congress. The debtor has not evaded his obligation to Nelson except as permitted by the Bankruptcy Code. The debtor has been punished for his prepetition misconduct in the manner prescribed by other law. It is not fundamentally unfair to permit this debtor to attempt consummation of a Chapter 13 plan.

### IV.  CLASSIFICATION OF CLAIMS

■ Though articulated as a good faith objection, Nelson challenges the debtor's proposed classification of claims. Classification of claims in a Chapter 13 case is not controlled by the good faith standard of § 1325(a)(3). Classification is regulated by 11 U.S.C. § 1322(b)(1).

Prior to amendment in 1984, § 1322(b)(1) read as follows:

Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated.

The 1984 amendments sanctioned special treatment for co-signed debts:

Subject to subsections (a) and (c) of this section the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consum-

er debt with the debtor differently than other unsecured claims.

The 1984 amendment is awkwardly worded. To give meaning to all words in the amended section, it must be true that a debtor's power to treat co-signed consumer debts "differently" has content separate from the proscription against unfair discrimination. The awkward language is resolved by holding that all different treatments are not necessarily fair discriminations.

This debtor proposes two classes of unsecured claim holders. Class I, to be paid in full, contains a single co-signed consumer debt. Class II, to be paid approximately 12%, contains only Nelson.

This classification of unsecured claims is unfairly discriminatory. The debtor has offered no proof of any circumstances justifying the proposed discrimination. There is no statement of the underlying logic, facts or bases for this classification. Mathematically, this debtor could propose a single class of unsecured claim holders all of whom would receive at least 18%. On this absence of evidence, it is unfair to discriminate against the victim of the debtor's prepetition misconduct. *See In re Harris,* 62 B.R. 391 (Bankr.E.D.Mich.1986); *In re Perkins,* 55 B.R. 422, 13 BANKR. CT. DEC. (CRR) 811 (Bankr.N.D.Okla.1985); *AMFAC Distribution Corp. v. Wolff,* 22 B.R. 510, 9 BANKR. CT. DEC. (CRR) 451 (Bankr. 9th Cir.1982); *In re Dziedzic,* 9 B.R. 424 (Bankr.S.D.Tex.1981); *In re Kovich,* 4 B.R. 403, 6 BANKR. CT. DEC. (CRR) 482, 2 COLLIER BANKR. CAS.2D (MB) 203 (Bankr.W.D.Mich.1980).

The proposed plan satisfies the disposable income test of § 1325(b)(1) and is proposed in good faith pursuant to § 1325(a)(3). Confirmation is denied because the plan discriminates unfairly against a class of unsecured claim holders.

An appropriate order will be entered.